UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SCOTT E. FRIEDBERG,                     :
                                        :    24-cv-04072 (NJC)(ST)
                         Plaintiff,     :
                                        :    **AFFIRMATION OF STEFANIE**
        -against-                       :    **TOREN IN SUPPORT OF NYIT**
                                        :    **DEFENDANTS' MOTION TO**
NEW YORK INSTITUTE OF TECHNOLOGY,       :    **DISMISS THE AMENDED**
DANIEL QUIGLEY, TIFFANY BLAKE,          :    **COMPLAINT**
JUNIUS GONZALEZ, KATHERINE ZULIANI,     :
CHERYL MONTICCIOLO, CARLYN              :
ANNUNZIATA, CATHERINE FLICKINGER,       :
                                        :
                         Defendants.    :
------------------------------------------------------------x

      STEFANIE TOREN, an attorney duly admitted to practice law in all the Courts of the

State of New York, hereby affirms the following to be true, under the penalties of perjury:

      1.      I am a partner at the law firm of Clifton Budd & DeMaria, LLP, attorneys for

Defendants New York Institute of Technology ("NYIT"), Daniel Quigley, Tiffany Hinds, née

Blake, Katherine Zuliani, Cheryl Monticciolo and Catherine Flickinger (collectively with NYIT,

the "NYIT Defendants"). As such, I am familiar with all of the facts and circumstances of this

action and submit this affirmation in support of NYIT Defendants' motion to dismiss Plaintiff

Scott E. Friedberg's ("Plaintiff") Amended Complaint.

      2.      A copy of Plaintiff's Amended Complaint in this action is attached as **Exhibit A**.

      3.      A copy of Plaintiff's Charge of Discrimination, dated November 25, 2022, filed

with the U.S. Equal Employment Opportunity Commission against NYIT is attached as **Exhibit**

**B**.

      4.      Excerpts of the collective bargaining agreement between NYIT and the American

Association of University Professors at NYIT in effect during the period of September 1, 2017

until August 31, 2022 is attached as **Exhibit C**.

Dated:  November 4, 2024
        New York, New York

_____

STEFANIE TOREN

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------X

SCOTT E. FRIEDBERG,

                      Plaintiff,

    -against-

NEW YORK INSTITUTE OF TECHNOLOGY,
DANIEL QUIGLEY, TIFFANY BLAKE,
JUNIUS GONZALEZ, KATHERINE ZULIANI,
CHERYL MONTICCIOLO, CARLYN
ANNUNZIATA and CATHERINE FLICKINGER,

                      Defendants.

------------------------------------------------X

Civ. Action No.
24-cv-04072 (NJC)(ST)

**AMENDED
COMPLAINT
AND DEMAND FOR
JURY TRIAL**

## COMPLAINT

Plaintiff, SCOTT E. FRIEDBERG, by his attorneys Victor A. Carr & Associates, as and for an AMENDED VERIFIED COMPLAINT against the defendants, alleges as follows upon information and belief:

## NATURE OF ACTION
## DISCRIMINATION CLAIMS

1.    Plaintiff, a former faculty member and employee of the defendant, NEW YORK INSTITUTE OF TECHNOLOGY (hereinafter referred to as "NYIT") alleges that he was discriminated against based on his age, disability, religion and veteran status while employed by NYIT and when he was terminated from employment at NYIT on or about January 22, 2022.

2.      Plaintiff asserts both Federal and State Law claims collectively against the defendants, NYIT and the individual defendants, acting as employees, supervisors, Deans and Department Heads of NYIT, alleging violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 ("ADA); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634("ADEA"); the Civil Rights Act of 1871, 42 U.S.C. § 1985(3); the Vietnam Era Veterans Readjustment Assistance Act of 1974 ("VEVRAA"), 38 U.S.C. § 4211 et seq.; and numerous federal statutes governing federal personnel administration, along with state law violations of section 296 of the Executive Law of the State of New York (otherwise known as the "Human Rights Law", and hereinafter referred to as "HRL").

3.      Plaintiff's claims were presented to the U.S. Equal Employment Opportunity Commission ("EEOC") on or about November 25, 2022, including but not limited to claims of age discrimination, disability discrimination, discrimination based upon his veteran status, retaliation and other discrimination claims that were within the reasonably expected scope of the EEOC investigation.

4.      Plaintiff was issued a "right to sue letter" by the EEOC, thereby exhausting his administrative remedies.

## BREACH OF CONTRACT CLAIMS

5.      Plaintiff asserts both Federal and State law claims of breach of contract alleging that his termination from employment constituted a breach of the collective bargaining agreement between NYIT and the American Association of University Professors (AAUP at NYIT, Inc.), pursuant to State Law and Section 301 of the Labor Management Relations Act, 29 U.S.C. 185.

## BREACH OF THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT ("HIPAA")

6.      Plaintiff alleges that the defendant, CARLYN ANNUNZIATA, violated his privacy rights in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 CFR Part 160 and Subparts A and E of Part 164, by disclosing to the NYIT defendants, without his authorization, "Individually identifiable health information" regarding his past, present and future physical or mental health or condition and the provisions of health care rendered to him and that the NYIT defendants terminated the plaintiff's employment based upon several factors, including the disclosure of the said protected health information.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391 (b )(I) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## **PARTIES**

9.     That at all times hereinafter mentioned, plaintiff was a resident of the County of Nassau, State of New York.

10.     That upon information and belief, at all times hereinafter mentioned, the defendant, NYIT, was and is a private, non-profit research university chartered by the New York State Board of Regents.

11.     That upon information and belief, at all times hereinafter mentioned, the defendant, DANIEL QUIGLEY, was an employee of NYIT, namely a Professor and Dean of the College of Arts and Sciences.

12.     That upon information and belief, at all times hereinafter mentioned, the defendant, TIFFANY BLAKE, was an employee of NYIT, namely a Professor and Associate Provost.

13.     That upon information and belief, at all times hereinafter mentioned, the defendant, JUNIUS GONZALEZ, was an employee of NYIT, namely the Provost and Vice President for Academic Affairs.

14.     That upon information and belief, at all times hereinafter mentioned, the defendant, KATHERINE ZULIANI, was an employee of NYIT, namely a Director of Human Resources.

15.     That upon information and belief, at all times hereinafter mentioned, the defendant, CHERYL MONTICCIOLO, was an employee of NYIT, namely the Title IX Coordinator.

16.     That upon information and belief, at all times hereinafter mentioned, the defendant, CARLYN ANNUNZIATA, was a resident of the County of Suffolk, State of New York.

17.     That upon information and belief, at all times hereinafter mentioned, the defendant, CARLYN ANNUNZIATA, was an employee of NYIT, namely a Research Assistant in the Department of Mathematics.

18.     That upon information and belief, at all times hereinafter mentioned, the defendant, CARLYN ANNUNZIATA, was an employee of the Veterans Affairs Medical Center, namely a CT/Interventional Radiographer in the Department of Radiology.

19.     That upon information and belief, at all times hereinafter mentioned, the defendant, CATHERINE FLICKINGER, was an employee of NYIT, namely General Counsel and Vice President for Human Resources.

20.     That upon information and belief, at all times hereinafter mentioned, the defendants, DANIEL QUIGLEY, TIFFANY BLAKE, JUNIUS GONZALEZ, KATHERINE ZULIANI, CHERYL MONTICCIOLO and CATHERINE FLICKINGER (hereinafter "the individual NYIT defendants"), were managers, supervisors, department heads and other officials of NYIT with human resource functions and with authority to make employment decisions on behalf of NYIT.

## AS AND FOR A FIRST CAUSE OF ACTION

## STATE LAW CLAIMS AND FEDERAL CLAIMS FOR VIOLATION OF SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT AGAINST NYIT FOR BREACH OF THE COLLECTIVE BARGAINING AGREEMENT

21.     Plaintiff, SCOTT FRIEDBERG, was employed as a faculty member in the math department of the NYIT College of Arts and Sciences for certain academic terms during the period between 2012 and January 2022.

22.     That during his employment as a faculty member of NYIT, plaintiff SCOTT FRIEDBERG was a member in good standing of the labor union American Association of University Professors at the New York Institute of Technology, Inc. (AAUP at NYIT, Inc.).

23.     That during his employment as a faculty member of NYIT, there was in full force and effect a Collective Bargaining Agreement between NYIT and AAUP at NYIT, Inc.

24.     That the said Collective Bargaining Agreement provided for "Grievance and Arbitration Procedures" and "Discipline and Dismissal Procedures" that were required in order for tenured or non-tenured faculty members to be dismissed or suspended.

25.     That the said Collective Bargaining Agreement provided, among other things that:

> "Tenured and non-tenured faculty members may be dismissed or suspended only for serious professional misconduct, material and substantial misrepresentation

of facts with respect to professional and academic qualifications, previous employment, academic credentials, publications, and other professional achievements, or gross neglect of duties".

26.     That the said Collective Bargaining Agreement further provided that:

> "**In the event that the Institute determines to suspend or dismiss a faculty member, the individual shall be advised in writing by email (with return receipt) of the charge(s) and disciplinary action against him or her**. A copy of such notice shall simultaneously be sent by overnight delivery (signature required) to the AAUP. Notice to the AAUP shall be served on its Presidents. **If the disciplinary action is based on a complaint made by an individual, NYIT must submit a written statement setting forth with particularity all of the allegations giving rise to the complaint. Said statement will be delivered to the employee who is the subject of the disciplinary action** and the AAUP at the same time and in the same manner as the notice of the disciplinary action."

27.     That on or about January 22, 2022, the plaintiff SCOTT FRIEDBERG was terminated from his employment with NYIT.

28.     That the plaintiff was never notified in writing of the charges and disciplinary actions against him.

29.     That the plaintiff was never provided with written statement(s) setting forth with particularity all of the allegations giving rise to any complaint(s) against him.

30.     That none of the procedures outlined and required by the said Collective Bargaining Agreement, including but not limited to Grievance and Arbitration procedures, were initiated or completed prior to the termination of the plaintiff.

31.     That NYIT failed to demonstrate that the plaintiff SCOTT FRIEDBERG was guilty of serious professional misconduct or gross neglect of duties or any good cause for his termination.

32.     That the defendant NYIT has failed and refused to perform the conditions of the Collective Bargaining Agreement, has breached the terms of the Collective Bargaining Agreement and has wrongfully discharged the plaintiff from employment.

33.     That as a result of the breach of the Collective Bargaining Agreement by the defendant NYIT, the plaintiff has lost wages and been damaged to the present time in the sum of one hundred thousand dollars ($100,000.00) and continuing.


## AS AND FOR A SECOND CAUSE OF ACTION

### STATE LAW CLAIMS AND FEDERAL CLAIMS FOR VIOLATION OF THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 ("HIPAA") AGAINST THE DEFENDANTS NYIT AND CARLYN ANNUNZIATA

34.   Plaintiff repeats, reiterates and realleges each and every allegation hereinbefore mentioned as if set forth herein fully at length.

35.   That upon information and belief, at all times hereinafter mentioned, the plaintiff, SCOTT FRIEDBERG, was a patient at the Veterans Affairs Medical Center located in Northport, New York.

36.   That upon information and belief, at all times hereinafter mentioned, the defendant, CARLYN ANNUNZIATA, as an employee of the Veteran's Affairs Medical Center, had access to the plaintiff's confidential medical records.

37.   That on or about October 12, 2021 and at other times presently unknown with any specificity, the defendant, CARLYN ANNUNZIATA, communicated and released to the defendants, DANIEL QUIGLEY, CHERYL MONTICCIOLO and other NYIT employees, plaintiff's individually identifiable health information regarding his past, present and future physical or mental health and conditions and the provisions of health care rendered to the plaintiff, including but not limited to a diagnosis and treatment for Post-traumatic Stress Disorder (PTSD), without the plaintiff's written or oral authorization, in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 CFR Part 160 and Subparts A and E of Part 164.

38.   That the defendants, DANIEL QUIGLEY, CHERYL MONTICCIOLO and other NYIT employees knowingly and willfully accepted the protected health information from defendant ANNUNZIATA, an employee of the

Veterans Medical Center, and used that protected health information to make adverse employment decisions against the plaintiff.

39. That the disclosure of the said health information and plaintiff's diagnosis and treatment for PTSD were relied upon and used by NYIT and the individual NYIT defendants to take adverse employment action against the plaintiff.

40. That as a result of the disclosure and use of the plaintiff's protected confidential health information, and the violation of the said HIPAA regulations, the plaintiff sustained damages for which the defendants, NYIT and ANNUNZIATA, are liable.

## AS AND FOR A THIRD CAUSE OF ACTION

### STATE LAW CLAIMS FOR VIOLATION OF
### SECTION 296 OF THE EXECUTIVE LAW OF THE STATE OF NEW YORK
### AGAINST THE DEFENDANTS
### NYIT AND CARLYN ANNUNZIATA

41. Plaintiff repeats, reiterates and realleges each and every allegation hereinbefore mentioned as if set forth herein fully at length.

42. Plaintiff, SCOTT FRIEDBERG, served in the U.S. Military, placing him within the protected class of veterans.

43. That the plaintiff's performance reviews at NYIT indicate that he was sufficiently competent to do his job.

44. Plaintiff, SCOTT FRIEDBERG, suffered an adverse employment action when he was terminated from his employment on January 20, 2022.

45. The adverse employment action occurred under circumstances giving rise to an inference of discrimination.

46. That the plaintiff was subject to a hostile work environment in violation of Section 296 of the Executive Law (HRL) in that his workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment.

47. That the individual NYIT defendants, at various times and places, described the plaintiff as "crazy" and that he was a danger to his students based upon his mental state and PTSD.

48. Defendant CATHERINE FLICKINGER stated that the plaintiff was crazy and a danger to his students.

49. Plaintiff's immediate supervisors, Roy and Silverstein stated that the plaintiff was "acting like a child".

50. Plaintiff was ordered by the defendant DANIEL QUIGLEY to not talk to students.

51. Beginning in December of 2021 and continuing through his termination on January 20, 2022, the individual NYIT defendants, including DANIEL QUIGLEY, made accusations against the plaintiff that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to

students.

52.    That this discriminatory conduct occurred with great frequency during the aforesaid period, it was severe in that it was insulting and humiliating and it unreasonably interfered with the plaintiff's work performance.

53.    That all of the individual NYIT defendants, including but not limited to DANIEL QUIGLEY, were aware of the plaintiff's status as a veteran and of his PTSD.

54.    That the defendant DANIEL QUIGLEY, as the Dean of the College of Arts & Sciences, actually participated in the conduct giving rise to the discrimination.

55.    That the defendant NYIT knew or should have known of the improper discriminatory conduct, but failed to take any corrective action, thereby encouraging, condoning and approving it.

56.    That the defendant NYIT cannot provide a legitimate, non-discriminatory basis for its action.

57.    That the HRL makes it an unlawful discriminatory practice for an employer, because of an individual's military status or disability to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

58.    That due to the defendants' violations of the HRL and their willful violation of the rights of the plaintiff, the plaintiff has sustained damages

and is entitled to recover from the defendants, jointly and severally.

## AS AND FOR A FOURTH CAUSE OF ACTION

### FEDERAL CLAIMS FOR VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

59.    Plaintiff repeats, reiterates and realleges each and every allegation hereinbefore mentioned as if set forth herein fully at length.

60.    Pursuant to Title VII of the Civil Rights Act of 1964, 42 USCA § 2000e-2, it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

61.    That the defendant NYIT and the individual NYIT defendants violated Title VII in that they discriminated against the plaintiff by creating a hostile work environment, failing to appropriately compensate him and by discharging him from his employment because of his Jewish religion.

62.    That the defendant DANIEL QUIGLEY, in refusing to allow for a Director's stipend and by failing to appropriately compensate the plaintiff as a Director in the Tutoring Center, was based upon personal animus and anti-Semitic partiality, creating a hostile work environment.

63.    That due to the defendant's violation of Title VII and the willful violation of the rights of the plaintiff, the plaintiff has sustained damages

and is entitled to recover from the defendants.

### AS AND FOR A FIFTH CAUSE OF ACTION

### FEDERAL CLAIMS FOR VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT OF 1990

64.   Plaintiff repeats, reiterates and realleges each and every allegation hereinbefore mentioned as if set forth herein fully at length.

65.   Pursuant to the Americans With Disabilities Act (ADA),  42 U.S.C. § 12112(a), "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

66.    That the defendant NYIT is an "employer" as defined in 42 U.S.C. § 12111.

67.   That the plaintiff is a person with a disability as defined in 42 U.S.C. § 12102, namely post-traumatic stress disorder.

68.   That the plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation.

69.   That the plaintiff suffered an adverse employment action because of his disability, namely his termination from employment on January 20, 2022.

70.   That the adverse employment action would not have occurred

but for his disability.

71.     That the individual NYIT defendants were aware of the plaintiff's disability.

72.     That he defendant DANIEL QUIGLEY and other individual NYIT defendants made invidious comments and statements critical of the plaintiff in degrading terms relating to his PTSD and the symptoms thereof including accusations that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to students.

73.     That due to the defendant's violation of the ADA and the willful violation of the rights of the plaintiff, the plaintiff has sustained damages and is entitled to recover from the defendants.

## AS AND FOR A SIXTH CAUSE OF ACTION

### FEDERAL CLAIMS FOR VIOLATION OF
### AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

74.     Plaintiff repeats, reiterates and realleges each and every allegation hereinbefore mentioned as if set forth herein fully at length.

75.     Pursuant to the Age Discrimination In Employment Act of 1967, 29 U.S.C. 621 to 634, it is unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age.

76.    Plaintiff, SCOTT FRIEDBERG is 61 years old and is a member of the protected class.

77.    That the plaintiff's performance reviews at NYIT indicate that he was sufficiently competent to do his job.

78.    Plaintiff, SCOTT FRIEDBERG, suffered an adverse employment action when he was terminated from his employment on January 20, 2022.

79.    That his termination from employment was due to plaintiff's age and was motivated by discriminatory intent.

80.    That the adverse employment action would not have occurred but for his age.

81.    That adverse employment actions were taken by NYIT against other employee/professors in similar situations to the plaintiff at NYIT, including Gabriel Sunshine, an 80 year old physics professor who was forced into retirement, Gurpal Guram, an 80 year old math professor who was forced into retirement by NYIT, R. Tabit, an elderly engineering professor who was forced into retirement and an elderly professor, Vito Faraci, who was terminated from employment due to his age.

82.    That these adverse employment actions occurred under circumstances giving rise to an inference of discrimination due to age.

83.    That due to the defendant's violation of the Age Discrimination In Employment Act of 1967 and the willful violation of the rights

of the plaintiff, the plaintiff has sustained damages and is entitled to recover from the defendants.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demands a trial by jury on all questions of fact raised by the complaint.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendants, and each of them, jointly and severally, for damages sustained by plaintiff in the amount of $100,000.00 as to each cause of action; reasonable attorney's fees pursuant to 42 U.S.C.A. § 1988, along with costs and disbursements incurred in this action; and such other and further relief as the court deems just and appropriate.

Dated:     Mineola, N.Y.
           September 4, 2024

                          Respectfully submitted,

                          VICTOR A. CARR & ASSOCIATES
                          Attorneys for Plaintiff

                          By: _____
                              Victor A. Carr, Esq.

                          88 Second Street
                          Mineola, N.Y. 11501

                          Telephone: (516) 652-7624
                          Facsimile:  (516) 747-2574
                          E-mail:     victor@victorcarrlaw.com

## VERIFICATION

STATE OF NEW YORK ) 
                  )  ss.:
COUNTY OF NASSAU  )


            SCOTT FRIEDBERG, being duly sworn, deposes and says that

he is the plaintiff in the within action; that he has read the foregoing VERIFIED

COMPLAINT and knows the contents thereof; that the same is true to his own

knowledge, except as to the matters therein stated to be alleged on information

and belief, and that as to those matters he believes it to be true.


                                    Scott E. Friedberg
                                    SCOTT FRIEDBERG


Sworn to before me this
   5th  day of September   , 2024


                    VICTOR A. CARR
Notary Public NOTARY PUBLIC, State of New York
                    No. 4803293
            Qualified in Nassau County
            Commission Expires April 27, 2027

*Civ. Action No. 24-cv-04072 (NJC)(ST)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCOTT E. FRIEDBERG,

*Plaintiff,*

*- against -*

NEW YORK INSTITUTE OF TECHNOLOGY, DANIEL QUIGLEY, TIFFANY BLAKE, JUNIUS GONZALEZ, KATHERINE ZULIANI, CHERYL MONTICCIOLO, CARLYN ANNUNZIATA and CATHERINE FLICKINGER,

*Defendants.*

## AMENDED COMPLAINT

### VICTOR A. CARR & ASSOCIATES

*Attorneys for Plaintiff*

88 Second Street
Mineola, New York 11501
(516) 747-2478
FAX (516) 747-2574
victor@victorcarrlaw.com

### Section 130-1.1 Statement

*By signing of the within document, the above attorney certifies that, to the best of the said attorney's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of this document or the contentions therein are not frivolous as defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator (22NYCRR).*

.........................................................
By:  VICTOR A. CARR, ESQ.
VICTOR A. CARR & ASSOCIATES
*Attorneys for Plaintiff*
88 Second Street
Mineola, New York 11501

# EXHIBIT B

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CHARGE OF DISCRIMINATION

| For Official Use Only – Charge Number: |
| --- |

EEOC Form 5A (October 2017)

| **Personal Information** | First Name: Scott    MI: E    Last Name: Friedberg |
| --- | --- |
| | Address: ▇▇▇▇▇▇▇▇▇▇ |
| | City: U▇▇▇▇▇▇▇ |
| | Phone: 516▇▇▇▇▇   Adelphi.edu |

| **Who do you think discriminated against you?** | Employer ☐    Union ☐    Employment Agency ☐    Other Organization ☒ |
| --- | --- |
| | Organization Name: NYIT |
| | Address: PO Box 8000                Suite: _____ |
| | City: Old Westbury    State: NY    Zip Code: 11568    Phone: 8000 |

| **Why you think you were discriminated against?** | Race ☐  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☒    I am a veteran with PTSD |
| --- | --- |
| | Disability ☒  Genetic Information ☐  Retaliation ☒  Other ☐ (specify) |

| **What happened to you that you think was discriminatory?** | Date of most recent job action you think was discriminatory: _____ |
| --- | --- |
| | Also describe briefly each job action you think was discriminatory and when it happened (estimate). |
| | I was the victim of character assasination for having mental illness. I have PTSD - I am a veteran. I was spied on, surveilled. I received no due process. I was talking to a student on Jan 24, 2022 and was fired for talking to that student. Based on my mental illness and a false accusation. No due process. |

| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures. |
| --- | --- |
| | I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination. |
| | **I declare under penalty of perjury that the above is true and correct.** |
| | Signature: Scott Friedberg          Date: 11/25/2022 |

# EXHIBIT C

**AGREEMENT**

**entered into between**

**NEW YORK INSTITUTE**
**OF TECHNOLOGY**

**and**

**AMERICAN ASSOCIATION OF**
**UNIVERSITY PROFESSORS**
**AT**
**THE NEW YORK INSTITUTE**
**OF TECHNOLOGY, INC.**

**(AAUP at NYIT, Inc.)**

**September 1, 2017 until August 31, 2022**

# Table of Contents

ARTICLE I - DEFINITIONS ...................................................................................................1

ARTICLE II - RECOGNITION ..............................................................................................3

ARTICLE III - INSTITUTE RIGHTS ....................................................................................3

ARTICLE IV - AAUP RIGHTS ..............................................................................................3

ARTICLE V - CHAPTER MEMBERSHIP..............................................................................4

ARTICLE VI - DEDUCTION OF PROFESSIONAL DUES, FEES, AND ASSESSMENTS
.....................................................................................................................................................4

ARTICLE VII - GUARANTEE OF RIGHTS ........................................................................5

ARTICLE VIII - SALARIES ...................................................................................................5
    1.    General Salary Increase - Full-Time Faculty and Professional Staff Members .......... 5
    2.    Annual Stipend ................................................................................................................. 6
    3.    Additional Compensation ............................................................................................... 6
    4.    Salary Schedule for Part-Time Faculty and Overload Rates for Full-Time Faculty ... 7
    5.    Hourly Rate Schedule for Part-Time Professional Staff, Overload for Full-Time
         Professional Staff, and Faculty When Not Teaching .....................................................7
    6.    Challenge Examinations .................................................................................................. 8
    7.    Promotional Increment .................................................................................................... 8
    8.    Honorary Ranks ............................................................................................................... 8
    9.    Order of Salary Increases ................................................................................................ 8
    10.   Two-Campus Work Assignments ................................................................................... 8

ARTICLE IX - FRINGE BENEFITS AND LEAVES............................................................8
    1.    Holidays............................................................................................................................ 8
    2.    Tuition Remission ........................................................................................................... 9
    3.    Health Care Benefits Parity ............................................................................................ 9
    4.    Medical Insurance (Active Members) ............................................................................ 9
    5.    Retiree Email ................................................................................................................. 11
    6.    Retiree Health Care Benefit .......................................................................................... 11
    7.    Dental Plan .................................................................................................................... 12
    8.    Flexible Spending Account (FSA) ................................................................................ 12
    9.    Sick Leave ..................................................................................................................... 13
    10.   Short-Term Disability Benefits .................................................................................... 14
    11.   Long-Term Disability Insurance .................................................................................. 14
    12.   Bereavement Days ........................................................................................................ 15
    13.   Leave of Absence .......................................................................................................... 15
    14.   Discretionary Unpaid Leave of Absence ..................................................................... 15
    15.   Life Insurance ............................................................................................................... 15
    16.   Retirement Plan ............................................................................................................ 16

| | | |
|---|---|---|
| 17. | Workers' Compensation | 16 |
| 18. | Unemployment Insurance | 17 |
| 19. | Travel Accident Insurance | 17 |
| 20. | Early Retirement Plans | 17 |
| 21. | Insurance Carriers | 17 |
| 22. | Jury Duty | 17 |
| 23. | Military Service | 17 |
| 24. | Adjunct Benefits | 18 |

**ARTICLE X - PARTICIPATION** ............................................................ **18**
| | | |
|---|---|---|
| 1. | Introduction | 18 |
| 2. | Full-Time Professional Staff | 25 |
| 3. | Multi-Campus Assignments; Transfer to another Campus | 26 |

**ARTICLE XI - INTELLECTUAL PROPERTY** ....................................... **26**

**ARTICLE XII - CORRELATION OF PROFESSIONAL STAFF JOB CLASSIFICATION WITH EQUIVALENT FACULTY RANKS** .......................... **28**
| | | |
|---|---|---|
| 1. | Counseling and Wellness Centers, HEOP offices, and Office of Admissions and Financial Aid | 28 |
| 2. | Library Department | 28 |

**ARTICLE XIII - ACADEMIC CRITERIA FOR APPOINTMENT AND PROMOTION.** **29**
| | | |
|---|---|---|
| 1. | Faculty Members | 29 |
| 2. | Librarians | 31 |
| 3. | Counselors | 32 |

**ARTICLE XIV - APPOINTMENTS** ...................................................... **33**
| | | |
|---|---|---|
| 1. | Visiting Appointments | 33 |
| 2. | New Regular Faculty Appointments | 33 |
| 3. | Presidential Appointments | 33 |
| 4. | Teaching Faculty | 34 |
| 5. | Clinical Faculty | 35 |
| | **Clinical Faculty Lines - School of Health Professions** | **35** |
| | **Promotion to Clinical Associate Professor** | **36** |
| | **Promotion to Clinical Professor** | **36** |
| 6. | Non-tenure Track Research Faculty Lines | 36 |
| 7. | Appointment Lengths | 36 |
| 8. | Terms of Appointment of Professional Staff and Professional Staff Specialists | 36 |
| 9. | Documents Received Upon Appointment | 37 |
| 10. | Joint Appointments | 37 |
| 11. | Tenure | 39 |

**ARTICLE XV - PROVISIONS RELATING TO SABBATICAL LEAVES, SCHOLAR INCENTIVE AWARDS, AND ISRC GRANTS** .................................... **41**
| | | |
|---|---|---|
| 1. | Sabbatical Leave | 41 |
| 2. | Scholar Incentive Awards | 42 |

3.    Institutional Support of Research and Creativity (ISRC) Grants ............................. 43
4.    Curriculum Vitae ........................................................................................................ 43
**ARTICLE XVI - FACULTY PERSONNEL COMMITTEES ............................................43**
1.    Introduction ................................................................................................................. 43
2.    Role of Faculty Personnel Committees ...................................................................... 43
3.    Explanation of Terms ................................................................................................. 44
4.    Number of SPCs in a School ...................................................................................... 44
5.    Minimum Number of Members in a SPC ................................................................... 44
6.    Election of SPC Members ........................................................................................... 45
7.    Who May Vote and Who May Serve on SPCs and DPCs........................................... 45
8.    Presence of Deans ....................................................................................................... 46
**ARTICLE XVII - PROFESSIONAL STAFF PERSONNEL COMMITTEES...................46**
1.    Introduction ................................................................................................................. 46
2.    Library PEC ................................................................................................................ 46
3.    Counseling and Wellness Center and Admissions and Financial Aid PEC's ........... 46
4.    HEOP PEC .................................................................................................................. 46
5.    Selection of PEC Members; Filling of Vacancies ..................................................... 47
6.    Recusal from PEC Service .......................................................................................... 47
**ARTICLE XVIII - PERSONNEL PROCEDURES .........................................................47**
1.    Academic Personnel Files .......................................................................................... 47
2.    Student Evaluations of Faculty................................................................................... 47
3.    Peer Observations of Faculty...................................................................................... 48
4.    Portfolios .................................................................................................................... 49
5.    Evaluations of Faculty by Chairs ............................................................................... 49
6.    Ensuring Quality in the Design and Delivery of the Student Learning Experience.. 50
7.    Criteria for Reappointment, Tenure and Promotion of Faculty................................. 50
8.    Procedures for Considering Requests for Reappointment, Promotion, Tenure, and
       Sabbatical Leaves ....................................................................................................... 52
9.    Special Provisions Applicable to Adjunct Faculty Members ..................................... 53
10.   Provisions Applicable When Faculty Members Request Reappointment, Tenure,
       Promotion, and/or Sabbatical Leave........................................................................... 53
       **Personnel Procedure Summary Chart for NYIT Faculty Members .......................56**
11.   Provisions Applicable When Professional Staff Members Request Reappointment,
       Promotion, and/or Sabbatical Leave........................................................................... 57
12.   Provisions Applicable to All Members (Faculty and Professional Staff) Requesting
       Reappointment, Tenure, Promotion, and/or Scholarly Leave (Sabbatical Leaves and
       Scholar Incentive Awards) ......................................................................................... 59
       **Personnel Procedure Summary Chart For NYIT Librarians ...................................60**
       **Personnel Procedure Summary Chart For NYIT HEOP Counselors and Assistant
       Directors...................................................................................................................61**
       **Personnel Procedure Summary Chart for NYIT Student Services Counselors 62**
       **Personnel Procedure Summary Chart for NYIT Admissions and Financial Aid
       Counselors ...............................................................................................................63**

13.    Non-Reappointment of Faculty .................................................................64
14.    Non-Reappointment of Professional Staff ...............................................65

**ARTICLE XIX - ACADEMIC FREEDOM** ..................................................65

**ARTICLE XX - REDUCTION IN FORCE** ..................................................65

**ARTICLE XXI - ACADEMIC SENATE** ......................................................66

**ARTICLE XXII - ACADEMIC ORGANIZATION** .....................................66

**ARTICLE XXIII - GRIEVANCE AND ARBITRATION PROCEDURES**......67
1.    Intent .......................................................................................................67
2.    Definitions ...............................................................................................68
3.    Informal Procedures for the Resolution of Complaints and Grievances – Step 1 .....68
4.    Internal Procedures for the Resolution of Grievances - Step 2 ...............68
5.    Arbitration - Step 3 .................................................................................68
6.    Student Accommodations ........................................................................69

**ARTICLE XXIV - DISCIPLINE AND DISMISSAL OTHER THAN FOR REDUCTION IN FORCE** ...............................................................................70
1.    Grievance and Arbitration .......................................................................70
2.    Alternative Procedure ..............................................................................71
3.    Joint Standing Committee ........................................................................72

**ARTICLE XXV - WORK OR BUSINESS INTERRUPTION**.......................73

**ARTICLE XXVI - EXCHANGE OF INFORMATION** ...............................73

**ARTICLE XXVII - FACULTY RESIGNATIONS** ......................................73

**ARTICLE XXVIII - SEPARABILITY** ........................................................74

**ARTICLE XXIX – DURATION OF AGREEMENT** ...................................74

**APPENDIX A - NYIT MEDICAL PLANS – FT U.S. Based Employees** ...........75

**APPENDIX B - GRADE APPEAL PROCEDURE**........................................77

1  **AGREEMENT entered into this ___ day of _____, 2019 between NEW YORK INSTITUTE OF**
2  **TECHNOLOGY and AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT THE NEW YORK**
3  **INSTITUTE OF TECHNOLOGY, INC. (AAUP at NYIT, Inc.).**

4  WITNESSETH:

5  WHEREAS, the intent and purpose of this Agreement are to provide the Institute's student body
6  with instruction and guidance of excellent quality, and to promote increasingly high standards of
7  academic achievement in every phase of the Institute's special mission in higher education, and

8  WHEREAS, the intent and purpose of this Agreement are to promote and improve the quality
9  and effectiveness of education at the Institute, the parties to this Agreement concur that these
10  objectives can be materially achieved through the amicable adjustment of matters of mutual interest
11  through the establishment of basic understandings relating to personnel policies, practices and
12  procedures, and matters affecting other conditions of employment relating to wages and hours, and

13  WHEREAS, it is recognized by the parties that mutual benefits are to be derived from a continual
14  improvement in the position of the Institute as an institution of higher learning, that the faculty is
15  expected to advise in developing educational programs and make recommendations to the President of
16  the Institute, it being understood that final decisions on all such matters are solely within the jurisdiction
17  of the Board of Trustees of the Institute.

18  NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties agree
19  as follows:

# ARTICLE I - DEFINITIONS

20  As used in this Agreement:

21  i.    "Board" means the Board of Trustees of the New York Institute of Technology.

22  ii.   "AAUP" means the American Association of University Professors at the New York Institute of
23        Technology, Inc. (also known as "AAUP at NYIT, Inc.").

24  iii.  "Academic Year" means the period starting September 1 through August 31.

25  iv.   "Chapters" means the Manhattan or the Old Westbury (including Central Islip) Chapters of the
26        AAUP.

27  v.    "Credit Hour" means 12.5 hours of instruction per academic term.  This will be consistent with
28        NYSED regulations.

29  vi.   "Equivalent Lecture Hour(s)" or "ELH" is the number of contact hours per week for traditional
30        lecture, laboratory, studio, and field courses.  For blended and online courses, ELH is the greater
31        of the contact hours or the Credit Hours

32  vii.  "Institute" means the New York Institute of Technology.

33  viii. "President" means the President of the Institute.

34  ix.   "Provost" means the Provost and Vice President for Academic Affairs.

x.  "SHP Vice President" means the Vice President for Health Sciences and Medical Affairs.

xi.  "Dean" means administrative and academic leader of an academic unit encompassing a single or several disciplines.

xii.  "Regular full-time members of the instructional and research faculty" in a presently established academic school means all persons represented for purposes of collective bargaining by the AAUP, as defined in Article II (Recognition) of the Agreement, who teach and/or do research and who are not regular part-time members of the faculty.

xiii.  "Regular part-time members of the instructional and research faculty" means all persons represented for purposes of collective bargaining by the AAUP, as defined in Article II (Recognition) of this Agreement, who teach and/or do research and who are not regular full-time members of the instructional and research faculty or members of the academic staff, and who have taught a minimum of 12 ELH per academic year at the Institute for three (3) consecutive years or more.  For purposes of this section, a year is defined as the twelve-month period between September 1 and August 31.

xiv.  "Faculty" means all regular full-time and regular part-time members of the instructional and research faculty.

xv.  "Regular full-time members of the academic-ranked professional staff" means all persons represented for purposes of collective bargaining by the AAUP, as defined in Article II (Recognition) of this Agreement, including members of the professional staff of the Library, of the Admissions Office, of the Counseling and Wellness Centers, and of the HEOP offices who are not regular full-time or regular part-time members of the instructional and research faculty and who are not regular part-time members of the academic-ranked professional staff.

xvi.  "Regular part-time members of the academic-ranked professional staff" means all persons represented for purposes of collective bargaining by the AAUP, as defined in Article II (Recognition) of this Agreement, including members of the professional staff of the Library, of the Admissions Office and the Counseling and Wellness Centers who are not regular full-time or regular part-time members of the instructional and research faculty and who are not regular full-time members of the academic-ranked professional staff, and who have worked an average of fifteen (15) hours per week at the Institute for three (3) consecutive years or more.  For purposes of this section, a year is defined as the twelve-month period between September 1 and August 31.

xvii.  "Professional Staff" means all regular full-time and regular part-time members of the academic ranked professional staff.

xviii.  Research center staff who do not hold faculty rank shall be excluded from this bargaining unit.

xix.  NYIT faculty with visiting titles, faculty and staff of the New York Institute of Technology College of Osteopathic Medicine, and the faculty and staff of the Vocational Independence Program are excluded from this bargaining unit.

xx.  "Continuous service" means teaching a full load during both the fall and spring semesters of each academic year counted.  Sabbatical leaves and authorized leaves of absence are credited toward continuous service.

xxi.  "Distributed Learning" refers to courses taught by synchronous audio/visual linkage and asynchronous web-based computer conferencing, as defined below:

1        1) "Synchronous Audio/Visual Linkage" refers to any instructional delivery method that
2           uses synchronous audio/video equipment to link an NYIT instructor to other NYIT
3           instructional sites.

4        2) "Asynchronous Web-based Computer Conferencing" refers to any instructional delivery
5           method that uses asynchronous communication methods, including, but not limited to,
6           commercial web-based course programming, web-sites, e-mail, and any other
7           asynchronous technology.

8  xxii.  "NYIT campuses" refers to the two main campuses of New York Institute of Technology located
9        at Old Westbury (Long Island) and Manhattan (New York City) in New York State.

10  xxiii.  "School" includes the College of Arts and Sciences and the College of Engineering & Computing
11        Sciences.

12  xxiv.  "Course" refers to any course offered for credit or otherwise required for an NYIT degree.

13  xxv.  A "sending site" is the location from which a faculty member teaches a Distributed Learning
14        course.

15  xxvi.  A "receiving site" is any location at which students taking the Distributed Learning course may
16        be located.

# ARTICLE II - RECOGNITION

17  The Institute recognizes the AAUP as the collective bargaining representative for all full-time and regular
18  part-time members of the instructional and research faculty in the presently established academic
19  schools in the various ranks of instructor, assistant professor, associate professor, professor, chair,
20  professional staff specialists and related adjunct titles, including the members of the professional staff
21  of the Library, of the Admissions Office, of the Counseling and Wellness Centers, and of the HEOP offices
22  who hold such faculty rank (including HEOP counselors and HEOP assistant directors, and counselors and
23  assistant directors/counselors in the Admissions Office and Counseling and Wellness Centers), employed
24  by New York Institute of Technology at its campuses located at Nassau County, Suffolk County, and New
25  York County, excluding those members of the faculty whose primary functions are administrative and
26  supervisory, such as the President, Vice Presidents, Deans, Directors, Associate Directors and Assistant
27  Directors, office clerical employees, technical, service, maintenance and operations employees, research
28  center staff who do not hold faculty rank, and all other job classifications.

# ARTICLE III - INSTITUTE RIGHTS

29  The AAUP recognizes the right of the Institute, through its Board of Trustees and its duly designated
30  representatives, to direct the faculty and to direct and control the operation and administration of the
31  Institute, to introduce new or improved methods, techniques, and programs of teaching, and in all
32  respects to carry out the ordinary and customary functions of management, and to establish and
33  maintain reasonable operating rules and regulations concerning collective bargaining unit members.

# ARTICLE IV - AAUP RIGHTS

34  1.  The AAUP shall have the right to conduct official AAUP business such as meetings and
35      conferences on the property of the Institute at reasonable times, provided that this will not
36      interfere with or interrupt normal Institute operations.

1     constituent faculty has the right to ask that a chairperson be replaced in situations where the faculty
2     feels that it would be best for the department.  Chairs shall be tenured where possible.  A Dean may
3     appoint a number of Coordinators to assist in the administration of a specific School.  Such Chairs
4     and Coordinators may be drawn from the membership of the collective bargaining unit.  In such
5     instances, the faculty member so selected will continue to teach the number of ELH prescribed by
6     Article X.1.c. (1) of this document.  Such Chairs and Coordinators will be given a separate
7     appointment letter spelling out in detail their administrative duties.  The AAUP recognizes that it is a
8     prerogative of the administration to establish administrative titles.

9   4.  Faculty members assigned to more than one campus shall identify themselves with a single campus
10     for the purpose of voting for personnel committee members and for representatives to the
11     Academic Senate, and shall inform the Vice President for Academic Affairs of their campus
12     identification.  This designation shall remain in effect until such time as it is changed by the faculty
13     member.

14     a.  A faculty member may designate either the Manhattan or Old Westbury Campus as his or her
15       home campus only if he or she teaches at least 50% of his/her total time at that campus.
16     b.  Notwithstanding the foregoing provisions, a faculty member who is a Chair (or Director or
17       Coordinator) only at one or two NYIT campuses may designate as his or her home campus only
18       an NYIT campus at which he or she serves as Chair (or Director or Coordinator).

19   5.  All elected positions within a School shall be subject to recall by the faculty.

20   6.  Changes in academic organization and self-governance procedures shall be as determined by the
21     various Schools by November 15 of each year, except as specified by this Contract.  By December 15
22     of each year, the Vice President for Academic Affairs or SHP Vice President, as applicable, and the
23     co-Presidents of the AAUP shall compile the written statement of the organization and procedures
24     agreed upon by each School and shall submit this statement to the academic Deans, who shall
25     distribute copies to all faculty members.

26   7.  Subject to the ultimate authority of the Board of Trustees, including the authority delegated to the
27     President by the Board of Trustees, the Faculty shall be self-governing in a manner not inconsistent
28     with the provisions of the collective bargaining agreement.  The Faculty, through its designated
29     bodies, shall have shared responsibility for:  establishing entrance requirements to the University;
30     establishing the curriculum for each degree and course offered by NYIT, including the
31     appropriateness of the mode and method of instruction intended for each course; evaluating and
32     recommending candidates for appointment, tenure and promotion and undertaking any other
33     actions necessary to carry out its professional responsibilities as specified in this agreement.

# ARTICLE XXIII - GRIEVANCE AND ARBITRATION PROCEDURES

34 ## 1.  Intent

35     The AAUP and the Institute agree that they will use their best efforts to encourage the prompt
36     settlement of complaints and grievances which may arise between members of the bargaining unit
37     and/or the AAUP and the Institute.

## 2. Definitions

    a.  A complaint is an informal claim by a member or members of the bargaining unit of improper, arbitrary, or discriminatory treatment by the Institute.  Complaints shall be disposed of through the informal procedures provided in Section 3 of this Article.

    b.  A grievance is any dispute between a member or members of the bargaining unit or the AAUP and the Institute involving the application and/or interpretation of the specific terms of this Agreement.

    c.  Arbitration is the proceeding before the American Arbitration Association provided for in Section 5 of this Article.

## 3. Informal Procedures for the Resolution of Complaints and Grievances – Step 1

A member of the bargaining unit who believes that he/she has a complaint under this Agreement shall discuss the matter promptly with a designee of the AAUP who will attempt to resolve the matter informally with relevant Institute representatives.  Should the matter not be quickly and satisfactorily resolved after such discussion, the Chapter may file a grievance in Step 2.

## 4. Internal Procedures for the Resolution of Grievances - Step 2

    a.  A grievance shall be filed no later than thirty (30) calendar days after it was found to exist or reasonably should have been found to exist or in cases where informal resolution is sought pursuant to Section 3 of this Article, no later than thirty (30) calendar days after the grievance was presented as described in Step 1, or it may be considered waived.

    b.  A grievance shall be filed in writing and shall state the reasons for the grievance in detail and the remedy sought.

    c.  If the grievant(s) is/are a member(s) of the bargaining unit, or the AAUP, the grievance shall be filed with the Institute.  If the grievant is the Institute, the grievance shall be filed with the AAUP.

    d.  Within fifteen (15) calendar days of receipt of a grievance, there shall be a conference between the President or his designee, a representative of the AAUP, and the grievant, if the grievant is not the Institute or the AAUP.

    e.  Within fifteen (15) calendar days after this conference, the party with whom the grievance is filed shall issue a decision, with reasons in writing, to the grievant with a copy to the AAUP, if the grievant is not the Institute or the AAUP.

## 5. Arbitration - Step 3

    a.  If the grievance has not been settled at Step 2, the AAUP or the Institute (or in the case of a suspension or termination, the faculty member) may notice the grievance for arbitration before the American Arbitration Association (hereinafter referred to in this article as the "Association") within ten (10) calendar days of receipt of the decision at Step 2 of the appeal.

b.  A grievance concerning a decision of the Board with reference to faculty retrenchment may be noticed before the Association immediately on receipt of the Board's decision.  The only issue submitted to the arbitrator shall be the question as to whether the decision of the Board was arbitrary or capricious.

c.  In arbitrations involving discipline or discharge, the Institute shall carry the burden of proof.

d.  The party seeking arbitration shall request the Association to submit a panel of arbitrators for selection by the parties, and the arbitration shall be conducted in accordance with the rules of the Association.

e.  In grievances involving decisions about tenure, or promotion, or reappointment, the arbitrator shall not substitute his or her own academic judgment for that of any of the bodies or individuals responsible for exercising such judgment in the peer review process.  Any review by the arbitrator shall be limited to an assessment of whether there has been compliance with the terms of this agreement governing tenure or promotion applications.  Under no circumstances may the arbitrator award tenure or promotion.  Where the arbitrator finds that there has been non-compliance with the applicable terms of the agreement, the arbitrator may only order such relief as is necessary to assure that the peer review process is carried out in conformity with the terms of this agreement.  Whenever the arbitrator finds that there has been a violation of the agreement in a determination concerning a denial of a tenure or promotion application and that such determination be recommitted to the peer review process, the arbitrator may order retention of the affected faculty member, or salary continuance if retention is inappropriate, for such period of time as the arbitrator deems necessary in order that compliance with the terms of the peer review process may be effected.

f.  In no event shall the arbitrator have the authority to add to, subtract from, modify, or amend the terms of this Agreement.

g.  Only one (1) grievance shall be submitted to one (1) arbitrator for determination.

h.  The decision of the arbitrator shall be final and binding subject to appeal by either party to the applicable court.

i.  All necessary expenses of arbitration except counsels' fees shall be borne equally by the parties.

## 6.  Student Accommodations

In the event that a faculty member disagrees with the student accommodation(s) recommended by the ADA coordinator, he/she may file an appeal with the Provost or the SHP Vice President (as applicable) or his/her designee.  In the event a designee is appointed to resolve the dispute, that individual will hold academic rank.  Before rendering a decision, the Provost or SHP Vice President, as applicable, or his/her designee will meet with the faculty member and the ADA coordinator.  The determination of the Provost or the SHP Vice President (as applicable) regarding the accommodation shall be final and binding.

# ARTICLE XXIV - DISCIPLINE AND DISMISSAL OTHER THAN FOR REDUCTION IN FORCE

## 1. Grievance and Arbitration

a.  Tenured and non-tenured faculty members may be dismissed or suspended only for serious professional misconduct, material and substantial misrepresentation of facts with respect to professional and academic qualifications, previous employment, academic credentials, publications, and other professional achievements, or gross neglect of duties.

b.  In the event that the Institute determines to suspend or dismiss a faculty member, the individual shall be advised in writing by email (with return receipt) of the charge(s) and disciplinary action against him or her.  A copy of such notice shall simultaneously be sent by overnight delivery (signature required) to the AAUP.  Notice to the AAUP shall be served on its Presidents.  If the disciplinary action is based on a complaint made by an individual, NYIT must submit a written statement setting forth with particularity all of the allegations giving rise to the complaint.  Said statement will be delivered to the employee who is the subject of the disciplinary action and the AAUP at the same time and in the same manner as the notice of the disciplinary action.

c.  Except where the faculty member poses a threat of immediate harm to him/herself or others, no suspension or dismissal of a faculty member will take effect until the procedures set forth herein have been completed.  Immediate harm may include severe or pervasive harassment that creates a serious liability for the University.

d.  Grievances for faculty suspended or dismissed pursuant to Article XXIV(c) will commence at Article XXIII, 4. Internal Procedures for the Resolution of Grievances - Step 2 (modified as follows), and be heard no later than five (5) days after the effective date of the suspension or dismissal.   A decision must be issued no later than five (5) days after the hearing.   The demand for arbitration must be filed no later than twenty (20) days after the effective date of the suspension or dismissal.   The permanent disciplinary arbitrators will be Howard Edelman and Richard Adelman.   If either of these arbitrators can no longer serve the parties will agree on a replacement or use the American Arbitration Association if no other options are available.   The arbitration hearing must commence no later than sixty (60) days after the effective date of the suspension or dismissal.  All periods will be counted in calendar days.  Faculty member will remain on the payroll and receive all benefits to which he/she is entitled as a full-time member of the bargaining unit for ten and one-half (10.5) months commencing with the effective date of the suspension or dismissal, unless the grievance is not taken to arbitration or the arbitration is completed in a shorter period of time.

e.  The faculty member or the AAUP may file a grievance concerning the suspension or dismissal of the faculty member.  Except as otherwise set forth herein, the parties shall utilize the Grievance and Arbitration procedures as set forth in Article XXIII of the collective bargaining agreement.

f.  Should the faculty member file a charge or complaint in any federal or state court or administrative agency which relates to the same transaction or occurrence as that which is the subject matter of the arbitration, the arbitration shall terminate with prejudice.

## 2. Alternative Procedure

a. In the event that the President, the AAUP, and the affected faculty member choose to do so, the following alternative procedure, as set forth below, may be employed.

b. The faculty member or the AAUP may request that a Faculty Hearing Committee formally consider the charges. Such a request must be made in writing, delivered by overnight delivery (signature required) to the President of NYIT, postmarked no later than thirty (30) calendar days after the receipt of the charges.

c. Upon receipt of a request for a hearing, the President of NYIT shall convene a Faculty Hearing Committee. The Committee shall consist of five tenured faculty members and one alternate to be selected as follows:

   1) One faculty member to be appointed by the administration;

   2) One faculty member to be selected by the individual against whom the charges have been brought;

   3) Three faculty members and one alternate to be chosen by lot from a pool of tenured faculty. Each School must elect two of its faculty members for this pool by the first meeting of the Academic Senate. Each faculty member so elected will serve for a one-year term.

   4) In order to obtain the three regular members and one alternate, six individuals will be selected by lot from the pool and assigned a number based on the order in which they were selected. Any of the individuals so selected will be permitted to recuse him/herself from the committee if he/she cannot render a fair and impartial judgment about the individual against whom the charges have been proffered. If this occurs, additional faculty member(s) will be selected by lot from the pool. After members have been given an opportunity to disqualify themselves, the faculty member concerned and the Institute shall each be entitled to exercise one peremptory challenge to a member selected from the pool. The remaining three members with the highest numbers will be the regular members of the panel, the individual with the lowest number to be the alternate.

   5) The committee will elect its own Chair.

   6) Except as herein provided, the committee shall establish its own rules and regulations.

d. The Faculty Hearing committee shall hold a hearing to investigate the charges. A verbatim record of the hearing shall be made. The cost of the record will be borne by the Institute and the AAUP, with copies made available to the faculty member.

e. The faculty member, the AAUP and the Institute shall be permitted to have representatives of their own choosing present during all hearings.

f. The faculty member through the AAUP or through a representative of his/her own choosing and the Institute shall have the right to confront and cross examine all witnesses.

g. The Faculty Hearing Committee and the parties shall have the right to secure the attendance of witnesses and production of documents, on notice to all parties. The Institute will provide whatever assistance may be required in this regard.

h. The Faculty Hearing Committee shall not be bound by strict rules of evidence, and may admit any evidence which is of probative value in determining the issues involved. Every possible effort shall be made to obtain the most reliable evidence available.

i. At the conclusion of the hearing, the Faculty Hearing Committee will submit a written recommendation regarding what, if any, disciplinary action should be taken against the faculty member. Said recommendation will be based solely on the evidence in the record and shall set forth in detail the basis for its recommendation.

j. The Faculty Hearing Committee's recommendation must be supported by at least four of the five members of the committee. The dissenting member, if any, may provide a separate recommendation.

k. A copy of the committee's recommendation(s) shall be sent by overnight delivery (signature required) to the Institute, the faculty member and the AAUP.

l. Within ten calendar days of the date on which the recommendation of the Faculty Hearing Committee is received by the President of NYIT, the President will advise the Faculty Hearing Committee, the faculty member and the AAUP in writing, delivered by overnight delivery (signature required), of his or her final decision relating to the charges.

m. In the event that the President determines to suspend or dismiss the faculty member, the faculty member or the AAUP may request review of this determination by an Arbitrator. Said request must be sent by overnight delivery (signature required) to the American Arbitration Association, the Institute and, if the arbitration is initiated by the faculty member, the AAUP. The request for arbitration must be postmarked within ten calendar days of the receipt of the President's determination.

n. The only issue submitted to the arbitrator shall be the question as to whether the decision of the President was arbitrary or capricious, and the parties will proceed directly to arbitration, without having the need first to proceed through the grievance procedure preceding arbitration, in accordance with Article XXIII of the collective bargaining agreement.

## 3. Joint Standing Committee

A Joint Standing Committee (JSC) will be established each year consisting of eight (8) representatives: the Presidents of the AAUP Old Westbury and Manhattan Chapters and two (2) other faculty representatives, to be chosen by the Joint Council of the AAUP; with all AAUP members of the Committee not to exceed four (4), as well as the Academic Vice President/Provost and three (3) other members of the Administration to be chosen by the Academic Vice President/Provost and/or the President. The JSC will address problems and questions relating to the CBA including issues related to medical benefits, reduction in work force, as well as those issues specifically delegated to it by the parties. This committee will meet once each semester and more if necessary, but no less than two times per academic year. Additional meetings will be scheduled at the request of either the AAUP or the Administration. The failure to meet, or the failure to reach an agreement arising out of the Joint Committee meetings, shall not give rise to a grievance and/or arbitration proceeding.