UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SCOTT E. FRIEDBERG,                              :
                                                 :   24-cv-04072 (NJC)(ST)
                            Plaintiff,           :
                                                 :
          -against-                              :
                                                 :
NEW YORK INSTITUTE OF TECHNOLOGY,                :
DANIEL QUIGLEY, TIFFANY BLAKE,                   :
JUNIUS GONZALEZ, KATHERINE ZULIANI,              :
CHERYL MONTICCIOLO, CARLYN                       :
ANNUNZIATA, CATHERINE FLICKINGER,                :
                                                 :
                            Defendants.          :

-------------------------------------------------------------x


### NYIT DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS
### <u>PLAINTIFF'S AMENDED COMPLAINT</u>

Clifton, Budd & DeMaria, LLP
*Attorneys for New York Institute of Technology,*
*Daniel Quigley, Tiffani Hinds, née Blake, Katherine*
*Zuliani, Cheryl Monticciolo and Catherine*
*Flickinger*
The Empire State Building
350 Fifth Avenue, Suite 6110
New York, New York 10118
Telephone:    (212) 687-7410
Facsimile:    (212) 687-3285


Of Counsel:
Douglas P. Catalano, Esq.
Stefanie R. Toren, Esq.                    Date of Service: November 4, 2024

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ............................................................................................2

    I.     FACTUAL BACKGROUND ..............................................................3

    II.    THE EEOC CHARGE ......................................................................3

    III.   THE AMENDED COMPLAINT ........................................................4

        A.    Plaintiff's Section 301 Claim ................................................4

        B.    Plaintiff's HIPAA Claim ......................................................6

        C.    Plaintiff's Discrimination Claims ..........................................7

ARGUMENT .............................................................................................................8

    I.     STANDARD FOR GRANTING A MOTION TO DISMISS ...............8

    II.    PLAINTIFF'S SECTION 301 CLAIM SHOULD BE DISMISSED......9

    III.   PLAINTIFF'S HIPAA CLAIM SHOULD BE DISMISSED ..............11

    IV.   PLAINTIFF'S DISCRIMINATION CLAIMS BASED ON DISABILITY SHOULD BE DISMISSED..............................................12

        A.    Plaintiff's ADA Claim Should Be Dismissed Against the Individual Defendants ..........................................................12

        B.    Plaintiff Fails to State a Plausible Claim of Disability Discrimination under the ADA and the NYSHRL .................13

        C.    Plaintiff Fails to Plausibly Allege a Hostile Work Environment Based on Disability in Violation of the NYSHRL..........................................................................15

        D.    Plaintiff's NYSHRL Disability Discrimination Claims Against the Individual Defendants Should Be Dismissed .........16

    V.    PLAINTIFF'S AGE DISCRIMINATION CLAIM UNDER THE ADEA SHOULD BE DISMISSED ..........................................................17

        A.    Plaintiff's ADEA Claim Should Be Dismissed Against the Individual Defendants ..........................................................17

        B.    Plaintiff Fails to Allege a Plausible Claim of Age Discrimination Under the ADEA ..........................................17

    VI.   PLAINTIFF'S VETERAN STATUS DISCRIMINATION CLAIM UNDER THE NYSHRL SHOULD BE DISMISSED..........................20

    VII.  PLAINTIFF'S CLAIM FOR RELIGIOUS DISCRIMINATION SHOULD BE DISMISSED ...................................................................21

A.    Plaintiff Failed to Exhaust His Administrative Remedies ........................21

B.    Plaintiff Fails to State a Plausible Claim of Religious Discrimination............................................................................23

CONCLUSION.................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

CASES

*Alfano v. Costello,*
    294 F.3d 365, (2d Cir. 2002)......................................................................22, 25

*Algarin v. NYC Health + Hospitals Corp.,*
    678 F.Supp.3d 497 (S.D.N.Y. 2023)...........................................................9, 25

*Allen v. United Parcel Serv., Inc.,*
    988 F.Supp.2d 293 (E.D.N.Y. 2013) ..............................................................10

*Alonzo v. Chase Manhattan Bank, N.A.,*
    25 F.Supp.2d 455 (S.D.N.Y.1998) .................................................................23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................9

*Avedisian v. Quinnipiac Univ.,*
    387 F. App'x (2d Cir. 2010).........................................................................10-11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).........................................................................................9

*Bohnet v. Valley Stream Union Free School Dist. 13,*
    30 F.Supp.3d 174 (E.D.N.Y. 2014) ........................................................ passim

*Buon v. Spindler,*
    65 F.4th 64 (2d Cir. 2023) ...............................................................................24

*Carrion v. Enter. Ass'n, Metal Trades Branch Local Union, 638,*
    227 F.3d 29 (2d Cir. 2000)...............................................................................11

*Dawkins v. Hudacs,*
    No. 94-CV-1655, 1996 WL 12032 (N.D.N.Y. Jan. 5, 1996)............................20

*DeLeon v. Teamsters Local 802, LLC,*
    2021 WL 1193191 (E.D.N.Y. March 29, 2021) ........................... 10, 11, 19

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010)...............................................................................5

*E.E.O.C. v. Port Auth. of N.Y. & N.J.,*
    768 F.3d 247 (2d Cir. 2014)...............................................................................9

*Feingold v. New York,*
    366 F.3d 138 (2d Cir.2004)..............................................................................17

*Ford v. Bernard Fineson Development Center,*
    81 F.3d 304 (2d Cir. 1996)...............................................................................23

*Fowlkes v. Ironworkers Local 40,*
    790 F.3d 378 (2d Cir. 2015)........................................................................21, 22

*Foxworth v. American Bible Society,*
    2005 WL 1837504 (S.D.N.Y. July 28, 2005) .................................................23

*Gillingham v. Geico Direct,*
    2008 WL 189671 (E.D.N.Y. Jan. 18, 2008) ................................................3, 4

*Gonzalez v. Legends Hospitality*,
  2017 WL 1166344 (E.D.N.Y. 2017)..................................................................... 20

*Gorman v. Covidien*, LLC,
  146 F.Supp.3d 509 (S.D.N.Y. 2015)............................................................... 20, 21

*Hill v. Curcione*,
  657 F.3d 116 (2d Cir. 2011)................................................................................ 8

*Iwelu v. New York State Off. of Mental Health*,
  No. 22-3096-CV, 2024 WL 2175938 (2d Cir. May 15, 2024) ......................... 13, 17

*Jones v. New York City Dep't of Educ.*,
  286 F. Supp. 3d 442 (E.D.N.Y. 2018)................................................................. 17

*Kirkland-Hudson v. Mount Vernon School District*,
  665 F.Supp.3d 412 (S.D.N.Y. 2023)................................................................... 13

*Kwan v. Andalex Grp.*, LLC,
  737 F.3d 834 (2d Cir. 2013)................................................................................ 13

*Lambert v. McCann Erickson*,
  543 F.Supp.2d 265 (S.D.N.Y. 2008)................................................................... 24

*Lazaro v. Good Samaritan Hosp.*,
  54 F.Supp.2d 180 (S.D.N.Y. 1999) .................................................................... 11

*Littlejohn, v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)............................................................................... 24

*Magnotti v. Crossroads Healthcare Management LLC*,
  2016 WL 3080801 (E.D.N.Y. 2016)............................................................... 16, 17

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir.2006)........................................................................... 5, 7, 8

*Marcus v. Leviton Manufacturing*,
  661 Fed. Appx. 29 (2d Cir. 2016)................................................................... 18, 19

*Meadows v. United Services, Inc.*,
  963 F.3d 240 (2d Cir. 2020)........................................................................... 11, 12

*Natofsky v. City of New York*,
  921 F.3d 337 (2d Cir. 2019)........................................................................... 13, 14

*O'Brien v. City of New York, Department of Education*,
  686 F.Supp.3d 221 (E.D.N.Y. 2023) ............................................................. 24, 25

*Perry v. NYSARC, Inc.*,
  424 Fed. Appx. 23 (2d Cir. 2011)........................................................ 14, 15, 18, 21

*Philippeaux v. North Central Bronx Hosp.*,
  871 F.Supp. 640 (S.D.N.Y.1994) ....................................................................... 20

*Phillips v. Merchants Ins. Group*,
  990 F. Supp. 99 (N.D.N.Y. 1998) ...................................................................... 20

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir.2007)................................................................................. 3

*Smith v. Reg'l Plan Ass'n*,
  No. 10-cv-5857 (BSJ) (KNF), 2011 WL 4801522 (S.D.N.Y. Oct. 7, 2011)........... 15

*Sommersett v. City of N.Y.*,
  No. 09-CV-5916, 2011 WL 2565301 (S.D.N.Y. June 28, 2011) ......................... 13

*Soules v. Connecticut, Department of Emergency Services and Public Protection*,
  882 F.3d 52 (2d Cir. 2018)................................................................................. 22

*Spiegel v. Schulmann*,
   604 F.3d 72 (2d Cir. 2010).............................................................................. 13
*Stern v. State Univ. of New York*,
   No. 16-cv-5588 (NG)(GLB), 2018 WL 4863588 (E.D.N.Y. Sept. 30, 2018) ......................... 15
*Swierkiewicz v. Sorema N. A.*,
   534 U.S. 506 (2002) ................................................................................... 12
*Testa v. CareFusion*,
   2018 WL 1611378 (E.D.N.Y. April 3, 2018) ............................................................ 18
*Thompson v. ABVI Goodwill Services*,
   531 Fed. Appx. 160 (2d Cir. 2013)...................................................................... 20
*Vaca v. Sipes*,
   386 U.S. 171 (1967).................................................................................... 10
*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)............................................................................. 18
*Williams v. Brooklyn Union Gas Co.*,
   819 F.Supp. 214 (E.D.N.Y. 1993) ..................................................................... 18
*Woodman v. WWOR-TV, Inc.*,
   *411 F.3d 69 (2d Cir. 2005)* ........................................................................... 24
*Wrighten v. Glowski*,
   232 F.3d 119 (2d Cir. 2000)............................................................................ 24

**STATUTES**

42 U.S.C. 2000e-5(e)(1).................................................................................... 23
N.Y. Exec. Law § 296 ............................................................................... 1, 16, 21

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 2, 8, 9, 25
Federal Rule of Civil Procedure 8(a)(2) .................................................................. 12

**REGULATIONS**

45 C.F.R. § 160.103 ..................................................................................... 11

## PRELIMINARY STATEMENT

Plaintiff Scott E. Friedberg ("Plaintiff" or "Friedberg"), a former faculty member at defendant New York Institute of Technology ("NYIT"), commenced this action against NYIT, current NYIT employees Daniel Quigley ("Quigley"), Tiffani Hinds, née Blake ("Hinds"), Katherine Zuliani ("Zuliani"), Cheryl Monticciolo ("Monticciolo"), Catherine Flickinger ("Flickinger" and collectively with NYIT, Quigley, Hinds, Zuliani, and Monticciolo, "NYIT Defendants"), former employee Junius Gonzalez ("Gonzalez") and former student Carlyn Annunziata ("Annunziata" and collectively with Gonzalez and NYIT Defendants, "Defendants").[1] (Am. Compl., ¶¶1-2)[2].

The majority of Plaintiff's Amended Complaint concerns his claims that Defendants discriminated against him on the basis of: (1) his alleged disability of post-traumatic stress disorder ("PTSD") in violation of the Americans With Disabilities Act ("ADA") and Section 296 of the N.Y. Executive Law (the "NYSHRL"); (2) his age in violation of the Age Discrimination in Employment Act (the "ADEA"); (3) his veteran status in violation of the NYSHRL; and (4) his Jewish religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* Plaintiff also alleges that NYIT violated Section 301 of the Labor Management Relations Act ("Section 301") when it terminated his employment purportedly in violation of the collective bargaining agreement ("CBA") between NYIT and the American Association of University Professors at NYIT (the "Union") that Plaintiff alleges governed his employment at NYIT. *Id.* at ¶¶21-33. Finally, Plaintiff alleges that NYIT and Annunziata violated the Health Insurance Portability and

---

[1]    Upon information and belief, Gonzalez and Annunziata were not timely served with the Complaint and, as such, all claims against them should be dismissed for untimely service. (Dkt. 9).

[2]    References are to the Amended Complaint, which is annexed to the Affirmation of Stefanie Toren as Exhibit A.

Accountability Act ("HIPAA") when Annunziata allegedly disclosed Plaintiff's PTSD diagnosis to NYIT. *Id*. at ¶¶35-40.

For the reasons set forth herein, Plaintiff's Complaint should be dismissed as against all Defendants for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). First, Plaintiff's ADA, ADEA and Title VII claims against Quigley, Hinds, Gonzalez, Zuliani, Monticciolo, Annunziata and Flickinger (collectively, the "Individual Defendants") should be dismissed as there is no individual liability under these statutes. Second, Plaintiff fails to plead any facts to allege a plausible claim of disability, age, veteran status or religious discrimination. He simply makes blanket assertions that his employment was terminated because of these protected characteristics without providing any factual allegations to support such claims, such as examples of derogatory comments based on his disability, age, veteran status or religion or disparate treatment. Third, Plaintiff's Title VII claim should be dismissed for failure to exhaust his administrative remedies as this claim was not included in Plaintiff's Charge of Discrimination (the "EEOC Charge") filed with the U.S. Equal Employment Opportunity Commission (the "EEOC"). Fourth, Plaintiff was not a member of the Union and, thus, his employment was not subject to the CBA, requiring dismissal of his Section 301 claim. Finally, there is no private right of action under HIPAA, requiring dismissal of this claim.

## <u>STATEMENT OF FACTS</u>

For purposes of this motion only, NYIT Defendants construe the facts Plaintiff alleges in the Amended Complaint as true.[3]

---

[3] Any reference to such facts and citations alleged in the Amended Complaint are based on this obligation and are not to be construed as an admission by NYIT Defendants that any of the facts alleged in the Amended Complaint are true.

## I.    FACTUAL BACKGROUND

Plaintiff, a former adjunct professor of mathematics at NYIT, an institution of higher education, was terminated from employment on or about January 2022. (Am. Compl, ¶¶ 1, 10-19, 21). Plaintiff alleges in the Amended Complaint that from December 2021 and continuing through Plaintiff's termination from employment in or about January 2022, Defendants made accusations against Plaintiff "that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to students." (*Id*. at ¶51). Thereafter, Plaintiff commenced this action against NYIT, current and former employees of NYIT and a former NYIT student concerning his termination from employment.[4]

## II.    THE EEOC CHARGE

Prior to commencement of this action, on or about November 25, 2022, Plaintiff filed the EEOC Charge with the EEOC against NYIT. (Toren Aff., Ex. B[5]). In the EEOC Charge, Plaintiff alleges that he was discriminated against because of his age and disability. *Id*. Specifically, Plaintiff wrote in the EEOC Charge that he was discriminated against because "I am a veteran with PTSD." He also wrote in the EEOC Charge:

> I was the victim of character assassination for having mental illness. I have PTSD. I am a veteran. I was spied on, surveilled. I received no due process. I was talking to a student on January 24,

---

[4]    Plaintiff commenced this action in State Court. (Dkt. 1). After removal of the action to this Court on June 6, 2024, NYIT Defendants served a motion to dismiss the Complaint. Thereafter, Plaintiff filed an Amended Complaint. (Dkt. 12).

[5]    A "court may only consider facts stated in the complaint or '[d]ocuments that are attached to the complaint or incorporated in it by reference.'" *Bohnet v. Valley Stream Union Free School Dist. 13*, 30 F.Supp.3d 174, 180 (E.D.N.Y. 2014), *aff'd*, 594 Fed. Appx. 53 (2d Cir. 2015)(citation omitted); *see also Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008)). Plaintiff specifically refers to the EEOC Charge in the Complaint and, as such, the Court may consider it on this motion to dismiss. (Am. Compl., ¶3).

> 2022 and was fired for talking to that student. Based on my mental illness and false accusation. No due process.

*Id*. Notably, Plaintiff did not allege discrimination based on religion in the EEOC Charge. *Id*.

## III.    THE AMENDED COMPLAINT

In the Amended Complaint, Plaintiff asserts six causes of action stemming from his belief that NYIT wrongfully terminated his employment in January 2022.

### A.    Plaintiff's Section 301 Claim

In the first cause of action, Plaintiff alleges that NYIT violated Section 301 by breaching the CBA. Plaintiff alleges that "during his employment as a faculty member of NYIT, plaintiff…was a member in good standing…" of the Union. (Am. Compl., ¶22). As such, Plaintiff contends that certain provisions of the CBA between NYIT and the Union applied to him. (Am. Compl., ¶¶23-32). Plaintiff cites Article XXIV, Section 1(a) of the CBA that identifies the conditions under which NYIT may terminate a faculty member subject to the CBA, such as for serious professional misconduct. (*Id*. at ¶25; Toren Aff., Ex. C, p.70[6]). Plaintiff also cites Article XXIV, Sections 1(b) and (c) which contain a procedure whereby NYIT is required to provide written notice of the charges and disciplinary action taken against a faculty member prior to dismissal. (*Id*. at ¶26; Toren Aff., Ex. C, p.70).

Plaintiff alleges that NYIT breached these provisions of the CBA by failing to provide Plaintiff with notice of the charges or disciplinary action taken against him, as well "failed to demonstrate that plaintiff … was guilty of serious professional misconduct or gross neglect of duties or any good cause for his termination." (Am. Compl., ¶¶ 28-29, 31-32). Plaintiff further contends that NYIT failed to comply with the grievance and arbitration provisions in the CBA.

---

[6]    NYIT Defendants submit portions of the CBA as it is specifically incorporated by Plaintiff's citation to the CBA's language. *See Bohnet*, 30 F.Supp.3d at 180 (E.D.N.Y. 2014).

(*Id*. at ¶30).  Such a claim is impossible as only "[t]he faculty member or the [Union] may file a grievance concerning the suspension or dismissal of the faculty member," under the provisions of Article XXIII of the CBA, and not NYIT. (Toren Aff., Ex. C, Art. XXIV, §1(e), p. 70). Pursuant to Article XXIII, Section 4(a), "[a] grievance shall be filed no later than thirty (30) calendar days after it was found to exist or reasonably should have been found to exist … or it may be considered waived." (*Id*. at p. 68).

While Plaintiff alleges that he was a member "in good standing" of the Union, Plaintiff's appointment letter for the Spring 2022 semester and the language within the Recognition clause of the CBA confirm that Plaintiff's employment at NYIT was not subject to the CBA. Rather, the December 16, 2021 letter appointing Plaintiff to employment at NYIT as an adjunct faculty member for the Spring 2022 term of January 24, 2022 until May 21, 2022 ("Spring 2022 Appointment Letter"), which Plaintiff accepted on December 16, 2021, confirms that Plaintiff's employment at NYIT was for a single semester. (Calabro[7] Aff., Ex. C[8]). The Spring 2022 Appointment Letter also confirms that Plaintiff was an at-will employee and, thus, not subject to the CBA: "[N]otwithstanding the academic term appointment, in accordance with New York Tech

---

[7]    References are to the Affidavit of Bernadette Calabro ("Calabro"), dated November 4, 2024.

[8]    Although the Amended Complaint does not specifically reference the Spring 2022 Appointment Letter and Plaintiff's most recent employment history cited in the Affidavit of Calabro, "the court may neverless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)(citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006)). Here, Plaintiff alleges that he was employed by NYIT "for *certain* academic terms during the period between 2012 and January 2022." (Am. Compl., ¶21)(emphasis added). The specification of which academic terms Plaintiff was employed by NYIT and Plaintiff's at-will status are integral to evaluating Plaintiff's Section 301 claim and whether or not Plaintiff was covered under the CBA, discussed *infra*.

policy, you will be an employee at will, meaning that either you or we may terminate your employment at any time for any or no reason." (*Id.*)

Even in the absence of the Spring 2022 Appointment Letter that confirmed Plaintiff's employment was at-will, the CBA is clear that Plaintiff was not a member of the Union. Pursuant to Article II of the CBA, NYIT recognizes the Union as the bargaining representative "for all full-time and regular part-time members of the instructional and research faculty…" (Toren Aff., C, p. 3). All faculty members of NYIT, however, are not included within the bargaining unit. For those faculty members who are not full-time employees, in order to be defined as "[r]egular part-time members of the instructional and research faculty," the faculty members must "have taught a minimum of 12 [equivalent lecture hours ("ELH")[9]] per academic year at the Institute for three (3) consecutive years or more." (*Id.* at p. 2 (Art. I, ¶ xiii)). NYIT did not appoint Plaintiff to teach any courses with corresponding ELH during the Spring 2020, Fall 2020 and Spring 2021 semesters. (Calabro Aff., Exs. A-B, ¶¶4-7). As Plaintiff did not teach a minimum of 12 ELH during the three consecutive years prior to his termination, nor does he allege that he did, he did not satisfy the definition of "regular part-time member of the instructional and research faculty." Accordingly, the Union was not his bargaining representative under the Recognition clause of the CBA and the terms of the CBA did not apply to his employment.

### B.    Plaintiff's HIPAA Claim

In the second cause of action, Plaintiff alleges "state law claims and federal claims" against NYIT and Annunziata for violation of HIPAA. Plaintiff alleges, upon information and belief, that he was a patient at the Veterans Affairs Medical Center (the "VA") and that Annunziata, in

---

[9]    An ELH is "the number of contact hours per week for traditional lecture, laboratory, studio, and field courses." (Toren Aff., Ex. C, p. 1, Art. I, ¶ vi).

connection with her employment at the VA, had access to Plaintiff's "confidential medical records." (Am. Compl., ¶¶35-36). Plaintiff then alleges that on October 12, 2021, Annunziata disclosed to Quigley, Monticciolo and others at NYIT, Plaintiff's "individually identifiable health information regarding his past, present and future physical or mental health and conditions and the provisions of health care rendered" to Plaintiff, which included his alleged diagnosis and treatment for PTSD, in violation of HIPAA. (*Id*. at ¶37). Plaintiff further alleges that Quigley, Monticciolo "knowingly and willfully accepted" the information from Annunziata and used it to "make adverse employment decisions against the [P]laintiff." (*Id*. at ¶38).

### C.    Plaintiff's Discrimination Claims

The remainder of the Amended Complaint concerns Plaintiff's allegations that he was discriminated against based on his age, disability, veteran status and religion. In the third cause of action, Plaintiff alleges that Defendants violated the NYSHRL by discriminating against him based on his veteran status and alleged disability when it terminated his employment and subjected him to a hostile work environment. (Am. Compl., ¶44-46, 57). According to Plaintiff, in December 2021 through January 2022, Defendants, who Plaintiff contends were aware of his veteran status and PTSD diagnosis, "made accusations against the plaintiff that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to students." (*Id.* at ¶51, 53). Plaintiff also alleges that Flickinger said that Plaintiff was "crazy" and "a danger to his students," as well that two supervisors said that Plaintiff was "acting like a child." (*Id*. at ¶¶48-49). Plaintiff alleges that Quigley also ordered Plaintiff not to speak with students. (*Id*. at ¶ 50).

In the fourth cause of action, Plaintiff alleges that Defendants violated Title VII by discriminating against him "because of his Jewish religion" "by creating a hostile work

environment, failing to appropriately compensate him and by discharging him from his employment." (*Id*. at ¶61). Specifically, Plaintiff alleges that Quigley refused to provide him with a stipend "to appropriately compensate the plaintiff as a Director in the Tutoring Center," which Plaintiff contends "was based upon personal animus and anti-Semitic partiality, creating a hostile work environment." (*Id*. at ¶62).

In the fifth cause of action, Plaintiff alleges that Defendants violated the ADA when he was terminated from employment "because of his disability," the same as his NYSHRL claim. (*Id*. at ¶¶70-71). Plaintiff alleges that Quigley and the other Defendants "made invidious comments and statements critical of the plaintiff in degrading terms relating to his PTSD and the symptoms thereof including accusations that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to students." (*Id*. at ¶ 72).

Finally, Plaintiff alleges that Defendants violated the ADEA when his employment was terminated due to his age. (*Id*. at ¶¶78-80). Plaintiff also contends that NYIT "forced into retirement" or terminated four 80-year old or "elderly" professors due to their age. (*Id*. at ¶81).

For the reasons set forth herein, Plaintiff's claims of violations of Section 301 and HIPAA, as well as discrimination based on disability, age, veteran status and religion should be dismissed for failure to state a claim.

## ARGUMENT

## I.    STANDARD FOR GRANTING A MOTION TO DISMISS

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all facts as alleged in the Amended Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See e.g. Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). However, a complaint can survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) only if it "contain[s] sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint need not make "detailed factual allegations," it must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id*. at 677-687 (*quoting Twombly*, 550 U.S. at 555). A Court should grant a motion to dismiss if the complaint provides factual allegations that lead to a "possible" but not "plausible" claim for relief. *Id.* at 678-79. A Court, though, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (*quoting Twombly*, 550 U.S. at 556). Plaintiff must assert in the Amended Complaint, "at a minimum, 'nonconclusory factual matter' sufficient to 'nudge' the claim 'across the line from conceivable to plausible.'" *Algarin v. NYC Health + Hospitals Corp*., 678 F.Supp.3d 497, 508 (S.D.N.Y. 2023)(citing *E.E.O.C. v. Port Auth. of N.Y. & N.J*., 768 F.3d 247, 254 (2d Cir. 2014)).

For the reasons set forth herein, Plaintiff's Amended Complaint should be dismissed in its entirety as Plaintiff fails to allege plausible claims of violations of Section 301 and HIPAA, as well as discrimination based on age, disability, religion and veteran status.

## II.    PLAINTIFF'S SECTION 301 CLAIM SHOULD BE DISMISSED

Plaintiff alleges that NYIT violated Section 301 as it breached the terms of the CBA by wrongfully terminating his employment and failing to comply with certain notice provisions in the CBA. (Am. Compl., ¶32). Plaintiff bases this cause of action on his conclusory allegation that he was a member of the Union and, thus, subject to the CBA. The Spring 2022 Appointment Letter, however, confirms that Plaintiff was an at-will employee during his Spring 2022 semester appointment, the period during which Plaintiff was terminated from employment, meaning that NYIT could terminate Plaintiff's employment at any time. (Calabro Aff., Ex. C).

The CBA also confirms that the Union was not Plaintiff's bargaining representative at the time of his January 2022 termination.  In order to be a covered part-time employee and subject to the CBA, Plaintiff would have had to teach a minimum of 12 ELH per academic year during the three consecutive years prior to his termination in January 2022. (Toren, Ex. C, p. 2 (Art. I, ¶ xiii)). The language in the Amended Complaint concerning Plaintiff's tenure at NYIT is not well-pleaded as Plaintiff alleges that he was employed by NYIT for "*certain* academic terms during the period between 2012 and January 2022," without specifying those terms, which is integral to the analysis of Plaintiff's claim. (Am. Compl., ¶21). Plaintiff did not teach any ELH during the Spring 2020, Fall 2020 and Spring 2021 semesters. (Calabro Aff., Exs. A-B, ¶¶4-7). As such, Plaintiff did not teach a minimum of 12 ELH per academic year during each of the three consecutive years prior to his termination to be a covered employee under the CBA and, thus, subject to its terms. As Plaintiff cannot state a Section 301 claim if he was not subject to the CBA, Plaintiff's claim should be dismissed. *See Avedisian v. Quinnipiac Univ.*, 3867 F. App'x 59, 62 (2d Cir. 2010).

To the extent the Court denies NYIT's motion on the grounds that Plaintiff was not a member of the Union and, thus, not subject to the CBA, Plaintiff's Section 301 claim should still be dismissed as a prerequisite to seeking judicial relief for violation of the CBA is that Plaintiff exhaust the grievance and arbitration procedure set forth in the CBA. *See Vaca v. Sipes*, 386 U.S. 171 (1967).  "If the employee exhausts the grievance process, the employee can sue the employer under § 301 in what is sometimes called a 'pure § 301 claim.'" *DeLeon v. Teamsters Local 802, LLC*, 2021 WL 1193191, *15 (E.D.N.Y. March 29, 2021)(citing *Allen v. United Parcel Serv., Inc*., 988 F.Supp.2d 293, 298 (E.D.N.Y. 2013)). Plaintiff "does not allege that he exhausted the grievance process and, therefore, is not advancing a pure § 301 claim." *DeLeon*, 2021 WL 1193191 at *15. If Plaintiff did not exhaust the grievance process, he can also sue NYIT for breach of the

CBA if he also alleges that the Union breached its duty of fair representation, known as a "hybrid § 301" claim. *Id*. at *16 (citing *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union, 638*, 227 F.3d 29, 33 (2d Cir. 2000)0. Plaintiff has failed to make any such allegations of a breach of the duty of fair representation by the Union in the Amended Complaint. As such, Plaintiff's Section 301 claims should also be dismissed on these grounds.

To the extent that Plaintiff references unidentified "State law claims" in the heading of the first cause of action, such claims should be dismissed. Plaintiff cannot state a breach of contract claim as he was an at-will employee in accordance with the Spring 2022 Appointment Letter. *See Lazaro v. Good Samaritan Hosp*., 54 F.Supp.2d 180, 183-184 (S.D.N.Y. 1999). Even if Plaintiff plausibly alleged that he was covered under the CBA, Section 301 preempts any State law contract claims, requiring their dismissal. *See Avedisian*, 387 F. App'x at 62 (2d Cir. 2010).

## III.    PLAINTIFF'S HIPAA CLAIM SHOULD BE DISMISSED

Plaintiff's second cause of action that NYIT and Annunziata violated HIPAA when Annunziata allegedly disclosed Plaintiff's confidential medical records concerning his alleged PTSD diagnosis and NYIT allegedly used this information to take an adverse action[10] against Plaintiff should be dismissed. The Second Circuit has held "that there is no private cause of action under HIPAA, express or implied." *Meadows v. United Services, Inc*., 963 F.3d 240, 244 (2d Cir. 2020)(collecting cases). In considering the issue, the Second Circuit noted that "the statute does not expressly create a private cause of action for individuals to enforce" HIPAA's prohibition on disclosing a patient's medical records without their consent. *Id*.  The Second Circuit also held that HIPAA does not "imply a private cause of action" as "[b]y delegating enforcement authority to

---

[10]    NYIT denies that it considered Plaintiff's PTSD in connection with its termination decision. Even if there is a private right of action under HIPAA, NYIT is not a "covered entity" in this context and, thus, not subject to HIPAA's Privacy Rule. *See* 45 C.F.R. § 160.103.

the Secretary of the Department of Health and Human Services, the statute clearly reflects that Congress did not intend for HIPAA to create a private remedy." *Id*. (citations omitted). Since there is no private cause of action under HIPAA, Plaintiff's second cause of action against NYIT and Annunziata should be dismissed.

To the extent Plaintiff alleges that NYIT and Annunziata violated State law, such a claim should be dismissed as Plaintiff has not identified the State statute under which he is asserting a claim. Pursuant to Fed. R. Civ. P. 8(a)(2), "A pleading that states a claim for relief must contain:…(2) a short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 513 (2002)(citation omitted). Here, while Plaintiff contends in the heading of his second cause of action that he is asserting "State law claims" against NYIT and Annunziata, Plaintiff fails to provide "fair notice" of the statute or statutes under which he is alleging a violation.  NYIT and Annunziata should not have to speculate as to what statutory claim Plaintiff is asserting against them.

## IV.    PLAINTIFF'S DISCRIMINATION CLAIMS BASED ON DISABILITY SHOULD BE DISMISSED

In the Amended Complaint, Plaintiff alleges that Defendants discriminated against him by terminating his employment based on his alleged disability of PTSD in violation of the ADA and the NYSHRL. Plaintiff also alleges that he was subjected to a hostile work environment based on his disability under the NYSHRL. For the reasons set forth herein, Plaintiff fails to allege plausible claims of disability discrimination, requiring their dismissal.

### A.    Plaintiff's ADA Claim Should Be Dismissed Against the Individual Defendants

Any claims of disability discrimination under the ADA against the Individual Defendants should be dismissed as there is no individual liability under the ADA. *Spiegel v. Schulmann*, 604

F.3d 72, 79 (2d Cir. 2010); *Iwelu v. New York State Off. of Mental Health*, No. 22-3096-CV, 2024 WL 2175938, n.5 (2d Cir. May 15, 2024).

### B.    Plaintiff Fails to State a Plausible Claim of Disability Discrimination under the ADA and the NYSHRL

Plaintiff's disability discrimination claims should also be dismissed as to all Defendants as Plaintiff fails to state plausible claims under the ADA and the NYSHRL. Under the *McDonnell Douglas* burden-shifting framework, Plaintiff bears the burden of establishing a *prima facie* case of disability discrimination under the ADA and the NYSHRL by showing that: (1) NYIT is subject to the statutes; (2) Plaintiff was disabled within the meaning of the statutes; (3) Plaintiff was qualified to perform the essential functions of his job; and (4) Plaintiff suffered an adverse employment action because of his alleged disability. *Kirkland-Hudson v. Mount Vernon School District*, 665 F.Supp.3d 412, 456-457 (S.D.N.Y. 2023). "'Although [the] [p]laintiff need not allege facts sufficient to make out a prima facie case for any of [his] discrimination claims in [his] [c]omplaint, the elements thereof provide an outline of what is necessary to render [his] claims for relief plausible.'" *Id*. at 449-450 (quoting *Sommersett v. City of N.Y.*, No. 09-CV-5916, 2011 WL 2565301, at \*5 (S.D.N.Y. June 28, 2011)). Moreover, to state a plausible claim under the ADA, Plaintiff must allege that the alleged discrimination based on a disability "was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the [defendant's] decision." *Kwan v. Andalex Grp*., LLC, 737 F.3d 834, 845 (2d Cir. 2013); *see Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

Assuming *arguendo* for purposes of this motion only that Plaintiff's diagnosis of PTSD constitutes a disability and that Defendants were aware of Plaintiff's PTSD, as alleged by Plaintiff, Plaintiff has failed to allege any facts from which to infer any discriminatory animus, such as that Defendants were at all motivated by Plaintiff's alleged disability when making the decision to

terminate his employment or that "but for" Plaintiff's alleged disability he would not have been terminated. In a baseless attempt to support his claims, Plaintiff alleges that Flickinger, NYIT's General Counsel and Vice President of Human Resources, "stated that [P]laintiff was crazy and a danger to his students." (Am. Compl., ¶48). Plaintiff also alleges that two of his supervisors stated that Plaintiff was "acting like a child." (*Id*. at ¶49). Plaintiff further alleges that Quigley, Dean of NYIT's College of Arts and Sciences, "ordered" Plaintiff "to not talk to students." (*Id*. at ¶50). Notably, Plaintiff does not allege when these alleged remarks were stated, to whom they were made and in what context.

Even if these remarks were made, which NYIT Defendants deny, Plaintiff has failed to allege how any of these alleged remarks have any connection to Plaintiff's PTSD to plausibly allege that Plaintiff's PTSD was a motivating factor (for purposes of the NYSHRL) or the "but for" cause (for purposes of the ADA) in NYIT's decision to terminate his employment. None of these alleged remarks even remotely suggest that Plaintiff's termination was motivated by "assumptions or attitudes" concerning PTSD. *See Perry v. NYSARC, Inc*., 424 Fed. Appx. 23, 25 (2d Cir. 2011)(citations omitted)(holding that "because we conclude that [the plaintiff's] complaint fails to raise her allegations of disability discrimination …above the speculative level, the district court did not err in granting the motion to dismiss.").

Although NYIT's version of the events that transpired which led to Plaintiff's termination differs from the allegations in the Amended Complaint, Plaintiff's own allegations confirm that Plaintiff's alleged disability played no role in NYIT's termination decision. Specifically, Plaintiff alleges that in connection with his termination Defendants "made accusations against [P]laintiff that he was acting inappropriately with students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his

students and that he posed a risk of harm to students." (Am. Compl., ¶¶51,72). There are no allegations to suggest that any of the Defendants were motivated to make such accusations because of Plaintiff's alleged disability. Plaintiff also has not set forth any allegations to suggest disparate treatment, in that a non-disabled faculty member was accused of acting inappropriately with students and was not terminated. Plaintiff makes a blanket, conclusory assertion that "plaintiff suffered an adverse employment action because of his disability." (Am. Compl., ¶69). Such a bare assertion of discriminatory animus, without any specific factual support, is not sufficient to state a claim under the ADA. *See, e.g., Perry*, 424 Fed. Appx. at 25; *Smith v. Reg'l Plan Ass'n*, No. 10-cv-5857 (BSJ) (KNF), 2011 WL 4801522, at *6 (S.D.N.Y. Oct. 7, 2011) ("[w]ithout actual facts demonstrating discriminatory animus, discrimination is just one possibility for [defendant's] actions—as such, plaintiff's claim may be conceivable, but it is certainly not plausible.").

Additionally, Plaintiff alleges other discriminatory motivations for his termination, i.e., that he was also discriminated against based on his age, veteran status and religion. Plaintiff's assertion that Defendants had multiple reasons for discriminating against him undermines any claim that the alleged discrimination took place solely due to any alleged disability. *See Stern v. State Univ. of New York*, No. 16-cv-5588 (NG)(GLB), 2018 WL 4863588, at *13 (E.D.N.Y. Sept. 30, 2018) ("[t]he multitude of motivations proffered by Plaintiff for these adverse actions dooms her discrimination claim"). Plaintiff's failure to allege any factual allegations to support his claim that he was discriminated against based on his PTSD, requires dismissal of Plaintiff's ADA and NYSHRL disability discrimination claims.

## C.    Plaintiff Fails to Plausibly Allege a Hostile Work Environment Based on Disability in Violation of the NYSHRL

Plaintiff also alleges that Defendants subjected him to a hostile work environment under the NYSHRL, relying on the same allegations used to support his alleged wrongful termination

claim. Pursuant to Section 296(1)(h) of the NYSHRL, "harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of…" a person's disability. N.Y. Exec. Law § 296(1)(h). As set forth above, Plaintiff alleges that Flickinger, Quigley and two supervisors made certain remarks or instructed him not to speak with students. Even if such remarks were stated, Plaintiff has failed to allege any factual allegations to connect these alleged remarks to Plaintiff's PTSD or that Defendants' actions were motivated by discriminatory animus. Plaintiff's failure to plausibly allege that he was subject to inferior terms, conditions or privileges of employment because of his alleged disability, requires dismissal of this claim.

### D.    Plaintiff's NYSHRL Disability Discrimination Claims Against the Individual Defendants Should Be Dismissed

To the extent that the Court does not dismiss Plaintiff's disability discrimination claims under the NYSHRL against all Defendants on the basis that Plaintiff failed to state a claim, NYIT Defendants contend that the Court should also dismiss the NYSHRL disability discrimination and hostile work environment claims against the Individual Defendants. Under the NYSHRL, individuals can be liable if they have "an ownership interest in the employer or the authority to hire and fire employees." *Magnotti v. Crossroads Healthcare Management LLC*, 2016 WL 3080801 at *2 (E.D.N.Y. 2016)(citations omitted).  Although Plaintiff alleges that the Individual Defendants, excluding Annunziata, had "authority to make employment decisions on behalf of NYIT," Plaintiff does not allege that they had the authority to hire and fire others. (Am. Compl., ¶20). Even if the Individual Defendants had this authority, "[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor actually participates in the conduct giving rise to [the] discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir.2004)(citations omitted).  Here, Plaintiff does not allege that any of the Individual Defendants

were involved with the decision to terminate his employment. In fact, the causes of action concerning discrimination in Amended Complaint do not even mention Hinds, Monticciolo and Zuliani. Assuming *arguendo* that some of the Individual Defendants were involved with this decision, there is no connection to Plaintiff's disability from which to infer discrimination. Plaintiff merely alleges that Flickinger and Quigley made certain remarks, wholly unrelated to Plaintiff's alleged disability. Moreover, Plaintiff makes the blanket assertion that all of the Individual Defendants made certain accusations concerning his conduct toward students which, again, have no connection to Plaintiff's alleged disability.

Under the NYSHRL, an individual can also be liable for aiding and abetting a violation committed by another employee or the employer. *Magnotti,* 2016 WL 3080801 at \*2. For the same reasons discussed *supra*, Plaintiff has failed to plausibly allege that the Individual Defendants discriminated against Plaintiff based on his alleged disability or encouraged, approved or condoned such discriminatory conduct. *Id*.

**V.    PLAINTIFF'S AGE DISCRIMINATION CLAIM UNDER THE ADEA SHOULD BE DISMISSED**

    **A.    Plaintiff's ADEA Claim Should Be Dismissed Against the Individual Defendants**

Any claims of age discrimination under the ADEA against the Individual Defendants should be dismissed as there is no individual liability under this statute. *Iwelu,* 2024 WL 2175938; *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 442, 447 (E.D.N.Y. 2018).

    **B.    Plaintiff Fails to Allege a Plausible Claim of Age Discrimination Under the ADEA**

Plaintiff's claim that NYIT terminated his employment because of his age in violation of the ADEA should be dismissed for failure to state a claim. In order to defeat a Rule 12(b)(6) motion to dismiss an age discrimination claim under the ADEA, Plaintiff "must plausibly allege that [the]

adverse action was taken against [him] by [his] employer, and that [his] age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Manufacturing*, 661 Fed. Appx. 29, 31-32 (2d Cir. 2016) (citing *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 87 (2d Cir. 2015)); *see Bohnet*, 30 F.Supp.3d at 182-183.

In the Amended Complaint, Plaintiff fails to plead "sufficient facts to plausibly support a minimal inference of 'but-for' causality between his age and his termination." *Id*. While Plaintiff alleges that he suffered an adverse employment action when NYIT terminated his employment, Plaintiff fails to allege any facts that his age was the "but-for" cause of his termination.  Rather, Plaintiff makes a blanket, conclusory assertion that he is 61 years old and that "his termination from employment was due to plaintiff's age and was motivated by discriminatory intent." (Am. Compl., ¶79). A bare assertion of discriminatory animus, without any specific factual support, is not sufficient to state a claim under the ADEA. *See, e.g., Perry*, 424 Fed. Appx. at 25.

To succeed on his claim at the pleading stage Plaintiff "must come forward with more than just his age to prove discrimination." *Testa v. CareFusion*, 2018 WL 1611378, *16 (E.D.N.Y. April 3, 2018) (citing *Williams v. Brooklyn Union Gas Co*., 819 F.Supp. 214, 225 (E.D.N.Y. 1993)) ("[P]laintiff's age, standing alone, is insufficient to satisfy his burden of proof"). In the Amended Complaint, Plaintiff cites to no age-based remarks by anyone at NYIT or any alleged discriminatory comments that would lead to an inference of age discrimination. *See Bohnet*, 30 F.Supp.3d at 181. Plaintiff also provides no examples of disparate treatment or discriminatory conduct based on age in the Amended Complaint to allege a plausible claim of age discrimination. *See Bohnet*, 30 F.Supp.3d 174 at 181. In a baseless attempt to bolster his claim, Plaintiff alleges that NYIT took adverse employment actions against "other employee/professors in similar situations to…" Plaintiff and identifies four 80-year old or "elderly" professors who were either

- 18 -

allegedly forced into retirement or terminated due to their age. (Am. Compl., ¶81). However, Plaintiff fails to allege any facts concerning the circumstances under which these professors were allegedly forced into retirement or terminated to even suggest disparate treatment by NYIT of older employees. *See DeLeon*, 2021 WL 1193191 at *12. Plaintiff's claims are insufficient to infer age discrimination without more, as they are based on pure speculation and generalizations.

This Court has dismissed age discrimination claims when the complaint contains more detailed factual allegations in support of the claim than what Plaintiff has alleged in the instant Complaint. For example, in *Marcus*, the Second Circuit upheld this Court's dismissal of a Plaintiff's age discrimination claim. In *Marcus*, the Plaintiff alleged that he was terminated based on his age. 661 Fed. Appx. at 31-33. To support his argument, the Plaintiff alleged that the defendant was "attempting to get 'younger' by terminating older employees and replacing them with younger hires," that younger employees were not disciplined for the same misconduct as Plaintiff, and that, upon information and belief, Plaintiff was replaced by a younger, less experienced employee. *Id*. at 32-33. The Second Circuit considered these allegations to determine whether the Plaintiff "pled sufficient facts to plausibly support a minimal inference of 'but-for' causality between his age and his termination." *Id*. at 32. The Second Circuit agreed with the lower court that "the conclusory and speculative facts alleged in the amended complaint do not plead a claim of discrimination under the ADEA." *Id*. at 33; see also *Thompson v. ABVI Goodwill Services*, 531 Fed. Appx. 160 (2d Cir. 2013) (affirming dismissal of age discrimination claim).

Similarly, Plaintiff does not allege any facts in the Complaint to plausibly state a claim that "but for" Plaintiff's age, he would not have been terminated from employment, requiring dismissal of Plaintiff's ADEA claim. *See Bohnet*, 30 F.Supp.3d at 180-181 (granting motion to dismiss

ADEA age discrimination claims); *Gonzalez v. Legends Hospitality*, 2017 WL 1166344, *6 (E.D.N.Y. 2017)(granting motion to dismiss ADEA claim for failure to state a claim).

## VI.   PLAINTIFF'S VETERAN STATUS DISCRIMINATION CLAIM UNDER THE NYSHRL SHOULD BE DISMISSED

Plaintiff alleges in the Amended Complaint that Defendants violated the NYSHRL by terminating his employment because of his veteran status[11] and subjecting him to a hostile work environment when Defendants made certain accusations against Plaintiff based on his conduct with students. (Am. Compl., ¶¶ 42-58). Similar to Plaintiff's disability discrimination claim, Plaintiff's claim that Defendants terminated his employment because of his veteran status should be dismissed as Plaintiff has failed to plausibly allege that his termination occurred under circumstances giving rise to an inference of veteran status discrimination. *See Gorman v. Covidien*, LLC, 146 F.Supp.3d 509, 523 (S.D.N.Y. 2015). Plaintiff fails to provide any examples of derogatory remarks based on Plaintiff's veteran status made by Defendants or even a reference to Plaintiff being a veteran. Plaintiff also fails to allege any examples of disparate treatment to plausibly allege veteran status discrimination. Plaintiff merely makes a blanket, conclusory assertion that Defendants made accusations against him and terminated his employment because of his veteran status which is insufficient to state a claim. *See, e.g., Perry*, 424 Fed. Appx. at 25.

---

[11]   In Paragraph 2 of the Amended Complaint, Plaintiff alleges that he is asserting a claim under the Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA"); however, this claim is not included in any cause of action. Even if the Amended Complaint is deemed to include a cause of action for an alleged violation of VEVRAA, such a claim should be dismissed as there is no private right of action under VEVRAA in order to assert a claim of veteran status discrimination in this Court. *See Dawkins v. Hudacs*, No. 94-CV-1655, 1996 WL 12032, n. 6 (N.D.N.Y. Jan. 5, 1996)(citations omitted); *Phillips v. Merchants Ins. Group*, 990 F. Supp. 99, 101 (N.D.N.Y. 1998*); Philippeaux v. North Central Bronx Hosp.*, 871 F.Supp. 640, 648 (S.D.N.Y.1994), *aff'd*, 104 F.3d 353, 1996 WL 680758 (2d Cir.1996), *cert. denied*, 520 U.S. 1105, 117 S.Ct. 1110, 137 L.Ed.2d 312 (1997).

Similarly, Plaintiff has failed to plausibly allege a hostile work environment based on veteran status under the NYSHRL. Plaintiff has supplied no factual allegations in the Amended Complaint to suggest that he was subject to inferior terms, conditions or privileges of employment because of…" his veteran status. N.Y. Exec. Law § 296(1)(h). Again, Plaintiff does not allege any derogatory remarks based on his veteran status or provide examples of disparate treatment, requiring dismissal of Plaintiff's claim. *See Gorman*, 146 F.Supp.3d at 527.

## VII. PLAINTIFF'S CLAIM FOR RELIGIOUS DISCRIMINATION SHOULD BE DISMISSED

### A. Plaintiff Failed to Exhaust His Administrative Remedies

Plaintiff alleges that he was discriminated against based on his Jewish religion when Defendants created a hostile work environment, failed to appropriately compensate him and terminated his employment. (Am. Comp., ¶61). Plaintiff also alleges that Quigley, "in refusing to allow for a Director's stipend and by failing to appropriately compensate the plaintiff as a Director in the Tutoring Center, was based upon personal animus and anti-Semitic partiality, creating a hostile work environment." (Am. Compl., ¶62). Plaintiff's claim of religious discrimination under Title VII should be dismissed for failure to exhaust his administrative remedies.

Exhaustion of administrative remedies by filing a Charge with the EEOC is a precondition to filing suit. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). Here, Plaintiff alleges that he filed the EEOC Charge prior to commencement of this action. Significantly, nowhere within the EEOC Charge does Plaintiff allege a claim of religious discrimination. In fact, in response to the question, "Why you think you were discriminated against?", Plaintiff put "X" marks next to the protected categories of age, disability and retaliation, as well as wrote in "I am a veteran with PTSD." (Toren Aff., Ex. B). Plaintiff could have marked "religion" in response to that question, yet failed to do so. Even in the description of the alleged

discrimination, Plaintiff does not cite to any factual allegations that could be construed as raising a claim of religious discrimination.  (*Id.*)

Claims that were not raised in Plaintiff's EEOC Charge can only be litigated if the claims are "reasonably related" to Plaintiff's claims filed with the EEOC. *Soules v. Connecticut, Department of Emergency Services and Public Protection*, 882 F.3d 52, 57 (2d Cir. 2018). "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* (citing *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)). Here, only the first factor is relevant to whether Plaintiff's religious discrimination claim is "reasonably related" to the age and disability discrimination claims, as well as retaliation claim, asserted in the EEOC Charge.

Plaintiff's own description of the discrimination in the EEOC Charge confirms that Plaintiff's religious discrimination claim does not fall within the reasonably expected scope of the EEOC's investigation of the EEOC Charge. (Toren Aff., Ex. B). "A claim not included in an EEOC charge will not be deemed 'reasonably related' where the claim is based on 'a wholly different type of discrimination' from that alleged in the EEOC complaint, or '[w]here the facts in the original EEOC charge do not sufficiently apprise the EEOC that another type of discrimination claim lurks in the background.'" *Foxworth v. American Bible Society*, 2005 WL 1837504, * 10 (S.D.N.Y. July 28, 2005), *aff'd*, 180 Fed. Appx. 294 (2d Cir. 2006) (citing *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 458 (S.D.N.Y.1998)). Again, Plaintiff has raised a claim of religious discrimination, a "wholly different type of discrimination" than the claims alleged in the EEOC Charge – age discrimination, disability discrimination and retaliation. Nowhere within

the EEOC Charge does Plaintiff allude to any discrimination based on religion or any facts that would reasonably be interpreted as alleging religious discrimination. In addition, Plaintiff references his termination in the EEOC Charge and his allegedly being "spied on, surveilled." Nowhere within the EEOC Charge does Plaintiff allege that he was denied a stipend or raise any allegations about Quigley's alleged antisemitism to "fall withing the reasonable scope" of the EEOC's investigation of the EEOC Charge. As Plaintiff's claim of discrimination based on his religion is not reasonably related to the claims raised in the EEOC Charge, Plaintiff has failed to exhaust his administrative remedies under Title VII, requiring dismissal of this claim.

Moreover, had Plaintiff included his claim of religious discrimination concerning the compensation matter in the EEOC Charge, it would have been time-barred as of the date of filing of the EEOC Charge on or about November 25, 2022. Although Plaintiff omitted any details in the Amended Complaint concerning NYIT's alleged failure to provide him with the Director-level stipend, including the date, Plaintiff admits in the initial Complaint that NYIT purportedly denied him the stipend in or about 2018.  Thus, by November 25, 2022, more than 300 days had passed, making any such claim untimely under Title VII. *See Ford v. Bernard Fineson Development Center*, 81 F.3d 304, 307 (2d Cir. 1996) (citing 42 U.S.C. 2000e-5(e)(1)).

### B.    Plaintiff Fails to State a Plausible Claim of Religious Discrimination

Assuming *arguendo* that the Court does not dismiss Plaintiff's religious discrimination claim for failure to exhaust his administrative remedies[12], Plaintiff's claim should still be dismissed as he fails to allege a plausible claim of religious discrimination. Under Title VII, "[f]or a discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination," an

---

[12]    Any claims against the individual Defendants should also be dismissed as there is no individual liability under Title VII. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).

aggrieved party must show that "[(1)] [he] is a member of a protected class, [(2)] [he] was qualified, [(3)] [he] suffered an adverse employment action, and [(4)] [that he] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *O'Brien v. City of New York, Department of Education*, 686 F.Supp.3d 221, 234 (E.D.N.Y. 2023) (citing *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) and *Littlejohn*, 795 F.3d at 311).

Even construing the Amended Complaint in the light most favorable to Plaintiff, Plaintiff fails to allege that Defendants were aware of his unidentified religion. Plaintiff's failure to allege that Defendants had knowledge of Plaintiff's religion in order to infer discriminatory intent requires dismissal of Plaintiff's claim. *See Lambert v. McCann Erickson*, 543 F.Supp.2d 265, 277 (S.D.N.Y. 2008)(citing *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82-84 (2d Cir. 2005)("a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant.")).

Assuming *arguendo* that Defendants had knowledge of Plaintiff's religion, Plaintiff still fails to plausibly allege that the denial of a stipend and his termination were motivated by discriminatory intent. Significantly, Plaintiff fails to allege any details concerning the alleged refusal to provide Plaintiff a Director's stipend or to compensate him as a Director in the Tutoring Center to plausibly conclude that the alleged conduct constitutes an adverse employment action. In addition, similar to Plaintiff's age, disability and veteran status discrimination claims, Plaintiff does not allege that anyone made any derogatory remarks or that he was subjected to disparate treatment based on his religion. He merely claims that Quigley's failure to compensate him was "based upon personal animus and anti-Semitic partiality" without providing any factual allegations to support such a conclusory statement, such as examples of the alleged personal animus or antisemitism. (Am. Compl., ¶62). Notably, Plaintiff does not even allege that Quigley's alleged

"anti-Semitic partiality" played any role in the decision to terminate Plaintiff's employment. These conclusory assertions without any factual support are insufficient to survive a motion to dismiss a religious discrimination claim. *See Algarin*, 678 F.Supp.3d at 508; *O'Brien*, 686 F.Supp.3d at 234.

Finally, Plaintiff alleges absolutely no facts whatsoever to plausibly allege a hostile work environment under Title VII based on religion. In order to plausibly allege a hostile work environment under Title VII, Plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Again, other than referencing that Plaintiff was purportedly denied a stipend "based upon personal animus and anti-Semitic partiality," Plaintiff has failed to allege any severe or pervasive conduct based on his religion or identify how his working conditions were changed because of his religion. As a result, Plaintiff's religious discrimination claim should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to Fed. R. Civ. P. 12(b)(6), NYIT Defendants respectfully request that this Court grant their motion to dismiss Plaintiff's Amended Complaint in its entirety with prejudice as against all Defendants and award NYIT Defendants such other and further relief as this Court deems just and proper.

Dated: November 4, 2024
      New York, New York

Respectfully Submitted,

CLIFTON BUDD & DeMARIA, LLP
*Attorneys for NYIT Defendants*

By: *Stefanie Toren*
      _____
      Douglas P. Catalano
      Stefanie R. Toren