**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Scott E. Friedberg,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　　-v-<br><br>New York Institute of Technology, Daniel Quigley, Tiffany Blake, Junius Gonzalez, Katherine Zuliani, Cheryl Monticciolo, Carlyn Annunziata, and Catherine Flickinger,<br><br>　　　　　　　　　　　　Defendants. | 2:24-cv-4072<br>(NJC) (ST) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Scott E. Friedberg brings this action for damages against the New York Institute

of Technology ("NYIT"), Daniel Quigley, Tiffany Blake, Katherine Zuliani, Cheryl Monticciolo,

Catherine Flickinger (collectively, the "Moving Defendants"), Junius Gonzalez, and Carlyn

Annunziata.[1] Friedberg alleges that NYIT terminated his employment in violation of its

collective bargaining agreement (the "CBA") with Friedberg's labor union and that Quigley,

---

[1] Gonzalez and Annunziata have not appeared in this action. Therefore, only NYIT, Quigley, Blake, Zuliani, Monticciolo, and Flickinger are referred to as the "Moving Defendants."

On September 24, 2025, this Court ordered Plaintiff to "show cause why the claims against Gonzalez and Annunziata in this action should not be dismissed without prejudice pursuant to Rule 4(m), Fed. R. Civ. P., due to Friedberg's failure to serve Gonzalez and Annunziata or to otherwise show good cause for the failure to do so." (Order to Show Cause, ECF No. 20 at 2–3.) The Order indicated that "[f]ailure to respond to this order to show cause by October 1, 2025 will result in dismissal of the claims against Gonzalez and Annunziata in this action without prejudice." (*Id*. at 3.) Plaintiff failed to respond to the Court's Order or otherwise demonstrate that Plaintiff had timely served Gonzalez and Annunziata pursuant to Rule 4(m). Accordingly, Plaintiff's claims against Gonzalez and Annunziata are dismissed without prejudice.

Blake, Zuliani, Monticciolo, Flickinger, and Gonzalez (the "NYIT Administrator Defendants")

discriminated against him based on his age, disability, religion, and veteran status. The Amended

Complaint brings the following claims: (1) a state law breach of contract claim (against NYIT

only); (2) a claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185

("LMRA Section 301"), for breach of NYIT's collective bargaining agreement with the

American Association of University Professors at NYIT (the "Union"), the union to which

Friedberg allegedly belongs (against NYIT only); (3) claims under state and federal law for

violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (against

NYIT and Annunziata only);[2] (4) claims alleging disparate treatment on the basis of veteran

status and disability under the New York State Human Rights Law, N.Y. Exec. Law § 296

("NYSHRL") (against the NYIT Administrator Defendants);[3] (5) claims alleging a hostile work

environment on the basis of veteran status and disability under the NYSHRL (against the NYIT

Administrator Defendants); (7) claims alleging a hostile work environment on the basis of

religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 ("Title VII")

(against unspecified Defendants); (8) Title VII claims alleging disparate treatment on the basis of

religion (against unspecified Defendants); (9) claims for disparate treatment on the basis of

---

[2] Although the Amended Complaint alleges that Friedberg brings state law claims to enforce his rights under the HIPAA, it fails to identify the specific state laws that serve as the basis for such state law claims. (*See* Am. Compl. ¶¶ 34–40.)

[3] The third cause of action in the Amended Complaint alleges violations of the NYSHRL's prohibition on discrimination on the basis of veteran status and disability and is brought "AGAINST THE DEFENDANTS NYIT AND CARLYN ANNUNZIATA," however the paragraphs within the third cause of action only address the conduct of NYIT and the NYIT Administrator Defendants. (Am. Compl. at 10; *see id.* ¶¶ 47–51, 53–54.) The parties' briefing on the Motion to Dismiss confirms that Friedberg's NYSHRL claims set forth in the third cause of action are against NYIT and the NYIT Administrator Defendants, not Annunziata. (*See* Mem. at 14–17; Opp'n ¶ 29.)

disability under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 et seq ("ADA") (against unspecified Defendants); and (10) claims for disparate treatment under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq ("ADEA") (against unspecified Defendants). (Am. Comp. ¶¶ 5–6, 21–83.)

Before me is the Moving Defendants' Motion to Dismiss ("Motion to Dismiss"). (Mot., ECF No. 17.) For the reasons set forth below, I grant the Motion to Dismiss in its entirety, but nevertheless grant Friedberg leave to file a second amended complaint as follows:

(1) **The Federal and State Law HIPPA Claims and the Title VII Claims Challenging an Alleged Hostile Work Environment on the Basis of Religion**: Friedberg abandoned these claims by failing to oppose the Moving Defendants' arguments in his opposition brief. Accordingly, these claims are dismissed with prejudice.

(2) **The Breach of Contract and LMRA Section 301 Claims**: Friedberg's breach of contract claim under New York common law is preempted by LMRA Section 301 and is therefore dismissed with prejudice. Moreover, the LMRA Section 301 claim is also dismissed with prejudice because the Amended Complaint fails to allege that Friedberg attempted to exhaust, or actually did exhaust, the grievance and arbitration procedures for terminated employees under the relevant provisions of the CBA, which is a condition precedent to bringing his LMRA Section 301 claim. The CBA is both incorporated by reference in, and integral to, the Amended Complaint and therefore properly is considered in assessing the Rule 12(b)(6) motion. Accordingly, Friedberg's breach of contract and LMRA Section 301 claims are dismissed with prejudice.

(3) **The Title VII Claims Challenging Disparate Treatment and an Alleged Hostile Work Environment on the Basis of Religion**: As noted above, Friedberg failed to oppose the Moving Defendants' arguments that his Title VII claims challenging an alleged hostile work environment, and I dismiss those claims with prejudice. Additionally, Friedberg failed to exhaust his administrative remedies before filing this action with respect to his Title VII claims challenging disparate treatment and a hostile work environment on the basis of religion and, accordingly, *all* of Friedberg's Title VII claims are dismissed with prejudice.

(4) **The ADEA Disparate Treatment Claims:** The ADEA does not provide for liability against individuals, and the Amended Complaint fails to allege any facts to support a plausible inference that Friedberg's age was the but-for cause of NYIT's decision to terminate his employment. Accordingly, Friedberg's ADEA disparate treatment claims against the NYIT Administrator Defendants are dismissed with prejudice. However, I dismiss the ADEA claim against NYIT without prejudice and grant Friedberg leave under Rule 15(a)(2), Fed. R. Civ. P., to amend the Amended Complaint to allege facts that plausibly demonstrate that his age was the but-for cause of NYIT's termination of his employment.

(5) **The ADA Disparate Treatment Claims**: The ADA does not provide for liability against individuals, and the Amended Complaint fails to allege any facts that support a plausible inference that Friedberg's disability was the but-for cause of NYIT's decision to terminate his employment. Accordingly, Friedberg's ADA disparate treatment claims against the NYIT Administrator Defendants are dismissed with prejudice. However, I dismiss the ADA claim against NYIT without prejudice and

4

grant Friedberg leave under Rule 15(a)(2) to amend the Amended Complaint to allege facts that plausibly demonstrate that his PTSD was the but-for cause of the termination of his employment.

(6) **The NYSHRL Claims**: The Amended Complaint fails to state any federal claims, and there is no independent basis for subject matter jurisdiction over Friedberg's remaining NYSHRL claims for disparate treatment and a hostile work environment on the basis of veteran status and disability, such as diversity jurisdiction under 28 U.S.C. § 1332(a). I decline to exercise supplemental jurisdiction over the NYSHRL claims pursuant to 28 U.S.C. § 1367(c)(3). However, because Friedberg may file a second amended complaint with respect to the ADEA and ADA disparate treatment claims, he may assert any NYSHRL claims—including any claims based on his veteran status, age, religion, and disability—in any second amended complaint for future analysis.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Amended Complaint alleges violations of federal laws, including Title VII, the ADEA, and the ADA. (Am. Compl. ¶ 7.) Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the alleged events took place in the Eastern District of New York. (*Id.* ¶ 8.)

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint and documents that are incorporated by reference in it, or deemed integral to it, as addressed below in Discussion § I. *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (holding that, on a Rule 12(b)(6) motion to

5

dismiss, district courts may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents not expressly incorporated by reference in the complaint that are nevertheless 'integral' to the complaint").[4]

Friedberg is a 61-year-old Jewish veteran who suffers from post-traumatic stress disorder ("PTSD"). (Am. Compl. ¶¶ 42, 61, 67, 76.) Friedberg "was employed as a faculty member in the math department of the NYIT College of Arts and Sciences for certain academic terms during the period between 2012 and January 2022," until his employment was terminated on January 22, 2022. (Am. Compl. ¶¶ 1, 21.)

## I.      The Collective Bargaining Agreement

During his employment with NYIT, Friedberg "was a member in good standing of the . . . [U]nion." (*Id.* ¶ 22.) At the time of his termination, there was a collective bargaining agreement (the CBA) in place between NYIT and the Union. (*Id.* ¶ 5; *see also* Toren Aff. Ex. C ("CBA"), ECF No. 17-1 at 26–39.)[5] Specific articles of the CBA address "Grievance and Arbitration Procedures" ("the Grievance and Arbitration Article") and "Discipline and Dismissal Other Than For Reduction in Force" ("the Discipline and Dismissal Article") (CBA arts. XXIII, XXIV), which lay out procedures that are "required in order for tenured or non-tenured faculty members to be dismissed or suspended." (Am. Compl. ¶ 24.) The CBA's Discipline and Dismissal Article provides that:

---

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

[5] The CBA is attached to the Toren Affidavit. (ECF No. 17-1 at 26–39.) As discussed above, I consider the CBA because it is both incorporated by reference in the Amended Complaint and integral to it. *See supra* Discussion § I.

> Tenured and non-tenured faculty members may be dismissed or suspended only for serious professional misconduct, material and substantial misrepresentation of facts with respect to professional and academic qualifications, previous employment, academic credentials, publications, and other professional achievements, or gross neglect of duties.

(CBA art. XXIV, § 1(a).) It further provides that:

> In the event that [NYIT] determines to suspend or dismiss a faculty member, the individual shall be advised in writing by email (with return receipt) of the charge(s) and disciplinary action against him or her. A copy of such notice shall simultaneously be sent by overnight delivery (signature required) to the [Union]. Notice to the [Union] shall be served on its Presidents. If the disciplinary action is based on a complaint made by an individual, NYIT must submit a written statement setting forth with particularity all of the allegations giving rise to the complaint. Said statement will be delivered to the employee who is the subject of the disciplinary action and the [Union] at the same time and in the same manner as the notice of the disciplinary action.

(CBA art. XXIV, § 1(b).)

The CBA's Discipline and Dismissal Article also provides: "The faculty member or the [Union] may file a grievance concerning the suspension or dismissal of the faculty member. Except as otherwise set forth herein, the parties shall utilize the Grievance and Arbitration procedures as set forth in Article XXIII of the [CBA]." (CBA art. XXIV § 1(e).) It further states that "[g]rievances for faculty suspended or dismissed . . . will commence at Article XXIII, 4. Internal Procedures for the Resolution of Grievances - Step 2." (*Id.* § 1(c).) Under Section 4 of the Grievance and Arbitration Article, a Union member may file a grievance relating to the member's dismissal in writing with NYIT within 30 "calendar days after it was found to exist or reasonably should have been found to exist . . . ." (*Id.* art. XXIII, § 4(a)–(c).)

Friedberg "was never notified in writing of the charges and disciplinary actions against him" and "was never provided with written statement(s) setting forth with particularity all of the allegations giving rise to any complaint(s) against him." (Am. Compl. ¶¶ 28–29.) Before terminating Friedberg's employment on January 22, 2022, NYIT did not "initiate[] or

complete[]" any "of the procedures outlined and required by the [CBA], including but not limited to Grievance and Arbitration procedures . . . ." (*Id.* ¶ 30.)

## II.    Disclosure of Protected Health Information

Friedberg "was a patient at the Veterans Affairs Medical Center located in Northport, New York." (Am. Compl. ¶ 35.) Annunziata, "an employee of the Veteran's Affairs Medical Center, had access to the plaintiff's confidential medical records." (*Id.* ¶ 36.) On October 12, 2021, she "communicated and released" to Quigley, Monticciolo, and other NYIT employees, Friedberg's "individually identifiable health information regarding his past, present and future physical or mental health and conditions and the provisions of health care rendered to [him] including" his "diagnosis and treatment for" PTSD, without his "authorization." (*Id.* ¶ 37.) The Amended Complaint alleges that Quigley, Monticciolo, and other NYIT employees "knowingly and willfully accepted the protected health information" and that the NYIT Administrator Defendants "relied upon and used" this knowledge of Friedberg's PTSD diagnosis and treatment "to take adverse employment action against" him. (*Id.* ¶¶ 38–39.)

## III.    Employment Discrimination

The Amended Complaint alleges that "at various times and places," the NYIT Administrator Defendants, to whom Friedberg refers as the "individual NYIT Defendants," "described [Friedberg] as 'crazy' and . . . a danger to his students based upon his mental state and PTSD." (Am. Compl. ¶ 47; *see also id.* ¶¶ 20, 48.)[6] "QUIGLEY and other individual NYIT defendants made invidious comments and statements critical of [Friedberg] in degrading terms

---

[6] The terms "NYIT Administrator Defendants" as used in this Opinion and Order and "individual NYIT Defendants" as used in the Amended Complaint are interchangeable and refer to Quigley, Blake, Zuliani, Monticciolo, Flickinger, and Gonzalez.

relating to his PTSD and the symptoms thereof . . . ." (*Id*. ¶ 72.) Friedberg's "immediate supervisors, Roy and Silverstein stated that [he] was 'acting like a child.'" (*Id.* ¶ 49.)[7] "Beginning in December of 2021 and continuing through his termination on January 20, 2022, the individual NYIT [D]efendants . . . made accusations against [Friedberg] that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to students." (*Id.* ¶ 51; *see also id.* ¶ 72.) These remarks and accusations "occurred with great frequency" from December 2021 to January 2022, constituted "severe," "insulting and humiliating" conduct toward Friedberg, and "unreasonably interfered with [his] work performance." (*Id.* ¶ 52.)

The Amended Complaint also alleges that NYIT forced into retirement or terminated four "other employee[s]/professors in similar situations to" Friedberg, two of whom were 80 years old and two of whom were "elderly." (*Id.* ¶ 81.)

## IV.    The EEOC Charge

On November 25, 2025, Friedberg filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against NYIT using an EEOC form. (Am. Compl. ¶ 3; *see also* Toren Aff. Ex. B ("EEOC Charge"), ECF No. 17-1 at 24.)[8] The EEOC form asks, "Why do you think you were discriminated against?" and provides several checkboxes next

---

[7] The Amended Complaint does not include either Roy or Silverstein's first names or any other allegations about them. The original Complaint, filed by Friedberg acting pro se, mentions "Ranja Roy" and "Anna Silverstein." (Compl. ¶¶ 1, 34.)

[8] The EEOC Charge is attached to the Toren Affidavit. (Toren Aff. Ex. B, ECF No. 17-1 at 24.) As discussed below, I consider the EEOC Charge because it is both incorporated by reference in the Amended Complaint and integral to it. *See infra* Discussion § I.

to various reasons for the alleged discrimination including: "Religion," "Age," "Disability," and "Retaliation." (EEOC Charge.) On Friedberg's EEOC Charge, the checkboxes next to "Age," "Disability," and "Retaliation" are checked, but the checkbox next to "Religion" is not checked. (*Id.*) This section of Friedberg's EEOC Charge also includes the following handwritten notation: "I am a veteran with PTSD." (*Id.*) In the next section of the EEOC Charge, the form asks, "What happened to you that you think was discriminatory?" and provides space for a brief description. (*Id.*) In that section, Friedberg wrote:

> I was the victim of character assasination [sic] for having mental illness. I have PTSD. I am a veteran. I was spied on, surveilled. I received no due process. I was talking to a student on Jan 24, 2022 and was fired for talking to that student. Based on my mental illness and a false accusation. No Due Process.

(*Id.*)

## PROCEDURAL HISTORY

On February 1, 2024, Friedberg, acting pro se, brought this action in the Supreme Court of the State of New York, County of Nassau. (Not. Removal Ex. A ("Compl."), ECF No. 1 at 4–11.) On June 6, 2024, the Moving Defendants removed this action to this Court. (Not. Removal, ECF No. 1.) Following removal, counsel for Friedberg filed a notice of appearance. (ECF No. 7.) On July 22, 2024, the Moving Defendants filed a letter requesting a pre-motion conference on an anticipated motion to dismiss the Complaint. (ECF No. 8.) On July 24, 2024, Friedberg, through counsel, filed a response in which Friedberg requested leave to file an amended complaint. (ECF No. 9.) Upon review of the parties' letters, on July 25, 2024, I waived the pre-motion conference requirement and issued a briefing schedule on the Moving Defendants' anticipated motion to dismiss, which permitted Friedberg to file an amended complaint. (ECF No. 10.)

Friedberg filed the Amended Complaint on September 5, 2024. (Am. Compl.) On September 19, 2024, the Moving Defendants filed their letter requesting a pre-motion conference

concerning an anticipated motion to dismiss this pleading. (ECF No. 14.) On September 23, 2024, Friedberg filed a response in opposition. (ECF No. 15.) After reviewing the parties' submissions, I waived the pre-motion conference requirement and issued a briefing schedule on the Moving Defendants' motion to dismiss the Amended Complaint. (Elec. Order, Oct. 7, 2024.)

On December 16, 2024, the Moving Defendants filed their fully-briefed Motion to Dismiss in accordance with this Court's recommended bundling practices. (Mot.; Mem., ECF No. 17-3; Opp'n, ECF No. 18; Reply, ECF No. 19.) Both the Moving Defendants and Friedberg attached factual material in support of their submissions on the Motion to Dismiss.

The Moving Defendants attached to the Motion to Dismiss the affidavit of their counsel, Stefanie Toren ("Toren Affidavit") (Toren Aff., ECF No. 17-1 at 1–2) and the affidavit of Bernadette Calabro ("Calabro Affidavit") (Calabro Aff., ECF No. 17-2 at 1–3), a "Manager, Academic Affairs" at NYIT. The following exhibits are attached to the Toren Affidavit:

(1) a copy of the Amended Complaint (Toren Aff. Ex. A, ECF No. 17-1 at 3–22);
(2) Friedberg's EEOC Charge (EEOC Charge, ECF No. 17-1 at 23–24); and
(3) excerpts of the CBA in effect during the period from September 1, 2017 to August 31, 2022 (CBA, ECF No. 17-1 at 25–39).

The following documents are attached to the Calabro Affidavit:

(1) Friedberg's faculty compensation sheets for the Fall 2018, Spring 2019, Fall 2019 and Fall 2021 semesters (Calabro Aff. Ex. A, ECF No. 17-2 at 4–16);
(2) Friedberg's faculty compensation sheets for the Spring 2021 semester (Calabro Aff. Ex. B, ECF No. 17-2 at 17–20); and
(3) Friedberg's appointment letter for the Spring 2022 semester (Calabro Aff. Ex. C, ECF No. 17-2 at 21–23).

Friedberg attached to his opposition brief two emails sent to him by "AAUP-AFT Adelphi" in September and October 2024, which Friedberg forwarded to his counsel in this action. (ECF No. 18-1.)

11

## LEGAL STANDARDS

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A complaint fails to state a claim "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

## DISCUSSION

### I. Extrinsic Evidence

As a threshold matter, I address whether I may consider facts set forth in the following documents, which are attached to the Motion and to Friedberg's opposition brief, when deciding the Motion to Dismiss under Rule 12(b)(6):

12

- Friedberg's EEOC Charge (EEOC Charge, ECF No. 17-1 at 23–24);

- excerpts of the CBA in effect during the period from September 1, 2017 to August 31, 2022 (CBA, ECF No. 17-1 at 25–39);

- the Calabro Affidavit, including the following exhibits;

  - Friedberg's faculty compensation sheets for the Fall 2018, Spring 2019, Fall 2019, and Fall 2021 semesters (Calabro Aff. Ex. A);

  - Friedberg's faculty compensation sheets for the Spring 2021 semester (Calabro Aff. Ex. B); and

  - Friedberg's appointment letter for the Spring 2022 semester (Calabro Aff. Ex. C); and

- two emails sent to Friedberg by "AAUP-AFT Adelphi" in September and October 2024, which Friedberg forwarded to his counsel in this action (ECF No. 18-1.)

At the Rule 12(b)(6) stage, a court may consider documents that are attached to, incorporated by reference in, or integral to the complaint or are otherwise the subject of judicial notice. *Clark*, 89 F.4th at 93. A document may be incorporated by reference where the complaint "makes a clear, definite and substantial reference to" the document. *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020); *see also Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 173 (E.D.N.Y. 2024). A document is "integral to a complaint" where the "complaint relies heavily on its terms and effect," even if the "document is not expressly incorporated by reference." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). However, a plaintiff's "mere notice or possession is not enough" for a document to be deemed integral to the complaint. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

Friedberg's EEOC Charge and the CBA are incorporated by reference in the Amended Complaint, which makes clear and substantial references to both documents. (*See* Am. Compl. ¶¶ 3–4 (alleging that Friedberg's claims "were presented to the . . . EEOC . . . on or about

November 25, 2022," and that he was "issued a 'right to sue letter' by the EEOC"); *id.* ¶¶ 5, 23–32 (alleging claims for breach of contract under state law and LMRA Section 301 for violation of the CBA and quoting the relevant provisions).) Based on these references, Friedberg's EEOC Charge and the CBA are also integral to the Amended Complaint because Friedberg had actual notice of these documents and relied upon them when framing the Amended Complaint. *See Jajati*, 2024 WL 99659, at *2. It is therefore appropriate to consider the EEOC Charge and CBA in deciding the Motion to Dismiss. *Clark*, 89 F.4th at 93.

However, I do not consider the facts set forth in the Calabro Affidavit or the faculty compensation sheets and Spring 2021 appointment letter that are attached to it, or the two emails from "AAUP-AFT Adelphi" to Friedberg in resolving the Moving Defendants' Rule 12(b)(6) Motion. None of these documents are attached to the Complaint. Nor are they public documents of which the Court may take judicial notice. The Amended Complaint makes no reference to these documents, let alone "a clear, definite and substantial reference" sufficient to incorporate these documents by reference. *Trump*, 977 F.3d at 210 n.8. Finally, because the Amended Complaint does not rely on these documents at all, they are not properly considered as integral to the Amended Complaint. *See Clark*, 89 F.4th at 93 n.18.

## II.    Abandoned Claims

The Moving Defendants argue that Friedberg failed to oppose their motion to dismiss the "HIPAA claim set forth in [the] Second Cause of Action," the "Title VII religious discrimination claims set forth in the Fourth Cause of Action," and the "veteran status discrimination claim set forth in [the] Third Cause of Action," and thereby abandoned these claims, warranting their dismissal. (Reply at 6–7.)

"It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims." *Mulgrew v. United States Dep't of Transp.*, 750 F. Supp. 3d 171, 202 (S.D.N.Y. 2024); *Massie v. Wells Fargo Bank, N.A.*, 734 F. Supp. 3d 196, 202 n.4 (D. Conn. 2024), *appeal dismissed sub nom. Massie v. Wells Fargo Bank, Nat'l Ass'n*, No. 24-2116, 2024 WL 6471199 (2d Cir. Nov. 27, 2024) (same).

Friedberg's opposition to the Motion to Dismiss makes no reference to either his state or federal HIPAA claims. Nor does it present any argument to counter the Moving Defendants' position that there is no private right of action to enforce the HIPAA's requirements. Therefore, he has failed to oppose the Motion to Dismiss with respect to the HIPAA claims and I deem these claims abandoned. (*Compare* Mem. at 6–7 *with* Opp'n.) Accordingly, the federal HIPAA claim is dismissed with prejudice. Additionally, as noted above, the Amended Complaint states that Friedberg brings state law claims to enforce his HIPAA rights, but does not identify the state law basis for such claims. Nevertheless, as set forth below in Discussion § VII, I decline to exercise supplemental jurisdiction over any state law claims alleging a violation of the HIPAA, to the extent that Friedberg is alleging any such claims.

With respect to the Title VII religious discrimination claims, such claims concern an alleged hostile work environment and disparate treatment. Friedberg's opposition brief, however, only responds to the Moving Defendants' arguments regarding his Title VII disparate treatment claims. Specifically, Friedberg makes no explicit reference to his religious identity in opposition to the Motion to Dismiss, but argues generally that under Title VII, he "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." (Opp'n ¶ 46 (emphasis added).) Friedberg's reference to an "employment

15

decision," his termination, and an "adverse action" confirm that these arguments pertain only to his Title VII disparate treatment claims—not any Title VII hostile work environment claims. (*See id*. ¶¶ 46–48.) Therefore, Friedberg has failed to oppose the arguments for dismissal of his claims under Title VII that he was subjected to a hostile work environment based on his religion, and accordingly, these claims are dismissed with prejudice. I address Friedberg's Title VII disparate treatment claims further below. *See infra* Discussion § IV.

As discussed in greater detail below, I decline to exercise supplemental jurisdiction over Friedberg's state law claims, which include claims under the NYSHRL that he was subjected to discrimination based on his veteran status and disability. *See infra* Discussion § VII. Accordingly, I do not address the Moving Defendants' argument that Friedberg abandoned the NYSHRL claims.

### III.    Breach of Contract and LMRA Section 301 Claims Against NYIT

Relying on extrinsic evidence not integral to the Amended Complaint, the Moving Defendants argue that the Amended Complaint fails to plead plausible claims for breach of contract under New York common law and LMRA Section 301 because, at the time his employment with NYIT was terminated, Friedberg was an at-will employee, not a member of the Union covered by the CBA. (Mem. at 9–10.) The Moving Defendants assert that, as a part-time employee, Friedberg "would have had to teach a minimum of 12 [equivalent lecture hours] per academic year during the three consecutive years prior to his termination in January 2022" to be covered by the CBA, a requirement that Friedberg did not meet. (*Id.* at 10.)

The Moving Defendants also assert that the Amended Complaint's allegation that Friedberg was a member of the Union is "not well-pleaded" because Friedberg "alleges that he was employed by NYIT for 'certain academic terms during the period between 2012 and January

2022,' without specifying those terms, which is integral to the analysis of Plaintiff's claim." (*Id.* at 10 (quoting Am. Compl. ¶ 21).) In the alternative, they make two arguments. First, that the LMRA Section 301 claim should be dismissed because Friedberg did not "exhaust the grievance and arbitration procedure set forth in the CBA," which is a condition precedent to bringing a "pure" LMRA Section 301 claim. (Mem. at 10.) According to the Moving Defendants, the CBA does in fact "provide[] a mechanism for a covered faculty member to grieve their dismissal." (Reply at 6.) Second, the Moving Defendants argue that the Amended Complaint does not "allege[] that the Union breached its duty of fair representation," which is a condition precedent to a "hybrid" LMRA Section 301 claim. (Mem. at 10–11.)

Finally, the Moving Defendants argue for dismissal of the New York common law breach of contract claim on the basis that Friedberg was an at-will employee at the time of his termination, and, alternatively, because LMRA Section 301 preempts the state law breach of contract claim. (*Id.* at 11.)

Friedberg argues that I should not consider exhibits extrinsic to the Amended Complaint, which the Moving Defendants attached to their Motion and on which they rely in arguing for dismissal of the breach of contract and LMRA Section 301 claims. (Opp'n ¶¶ 12–16, 18–19, 27.) According to Friedberg, the Amended Complaint properly alleges that, at the time his employment was terminated, Friedberg was a member of the Union, a CBA was in effect, the CBA had specific provisions regarding grievances, arbitration, discipline, and dismissal, and NYIT breached those CBA provisions. (*Id.* ¶ 17.) He asserts that the question of whether he is a member of the union "present[s] factual issues that should not be decided in this motion to dismiss." (*Id.* ¶¶ 19–20, 28.) Friedberg also argues he was not required to exhaust any grievance procedures with respect to the CBA's "Discipline and Dismissal" procedures. (*Id.* ¶¶ 25–26.)

As a preliminary matter, Friedberg's breach of contract claim under New York common law is preempted by LMRA Section 301 according to the plain text of the statute. "Section 301 of the LMRA preempts claims that are 'inextricably intertwined with consideration of the terms of a labor contract.'" *Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 178 (2d Cir. 2000) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)); *see also Sullivan v. Gelb*, 735 F. Supp. 3d 282, 297 (S.D.N.Y. 2024), *aff'd,* No. 24-1917-cv, 2025 WL 1692670 (2d Cir. June 17, 2025) (same). "Any suit in state court 'alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law.'" *Sullivan*, 735 F. Supp. 3d at 297 (quoting *Allis-Chalmers Corp.*, 471 U.S. at 210). Here, the Amended Complaint alleges that NYIT breached the CBA, a labor contract, by terminating Friedberg's employment in January 2022, in violation of specific CBA provisions. (Am. Compl. ¶¶ 5, 23–32.) Accordingly, LMRA Section 301 preempts Friedberg's breach of contract claim under New York common law premised on the violation of the CBA's provisions.

LMRA Section 301 permits individuals to bring suits against their employers for breach of the collective bargaining agreement to which the employer is bound. 29 U.S.C. § 185. "Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 163 (1983). These suits are essentially breach of contract claims where the relevant contract is the underlying collective bargaining agreement, and, accordingly, courts have generally "borrowed" the applicable state statute of limitations governing contract claims. *Id.* at 162–63. Still, exhaustion is often not possible where "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. In such cases, the

18

individual may instead bring a "hybrid" suit, which essentially comprises two causes of action: (1) an LMRA Section 301 claim against the employer and (2) a claim against the union for breach of the duty of fair representation, which is "implied under the scheme of the National Labor Relations Act" ("NLRA"). *Id.* at 164. While the plaintiff need not sue both the employer and the union, she must plead and prove both claims. *Id.* Here, the Amended Complaint does not allege that the Union breached its duty of fair representation, so the claim set forth in the Amended Complaint is a "pure" rather than "hybrid" LMRA Section 301 claim. *See id.* at 163–64; *see generally* Am. Compl.

Contrary to Friedberg's argument, the CBA—which Friedberg maintains applies to him—plainly sets forth grievance procedures that an employee must exhaust before filing a claim in federal court against an employer for failure to comply with the CBA terms governing termination of employment. (*See* Opp'n ¶¶ 25–26.) The CBA's Discipline and Dismissal Article, which the Amended Complaint selectively quotes (Am. Compl. ¶¶ 25–26), sets forth not only the procedures that NYIT was required to follow when terminating Friedberg's employment, but also the procedures by which Friedberg was required to grieve the termination. Specifically, the CBA provides:

> The faculty member or the [Union] may file a grievance concerning the suspension or dismissal of the faculty member. Except as otherwise set forth herein, the parties shall utilize the Grievance and Arbitration procedures as set forth in Article XXIII of the [CBA].

(CBA art. XXIV § 1(d).) The CBA further provides that "[g]rievances for faculty suspended or dismissed . . . will commence at Article XXIII, 4. Internal Procedures for the Resolution of Grievances - Step 2." (*Id.* § 1(c).) Section 4 of the Grievance and Arbitration Article, in turn, requires that the Union member file a grievance for dismissal in writing with NYIT within 30 "calendar days after it was found to exist or reasonably should have been found to exist . . . ."

19

(*Id.* art. XXIII, § 4(a)–(c).) However, the Amended Complaint does not allege that Friedberg attempted to file, let alone actually filed, a written grievance with NYIT to challenge the NYIT's termination of his employment according to the procedures laid out in the CBA. The Amended Complaint therefore fails to allege that Friedberg "attempt[ed] to exhaust any grievance or arbitration remedies provided in the" CBA, which is a condition precedent to bringing his pure LMRA Section 301 claim. *DelCostello*, 462 U.S. at 163. Moreover, in opposition to the Motion to Dismiss, Friedberg does not request leave to amend the Amended Complaint to include any factual allegations showing that he attempted to exhaust grievance remedies set forth in the CBA prior to filing suit in federal court to enforce the terms of the CBA. (*See generally* Opp'n.)

Accordingly, the Amended Complaint fails to plead plausible claims for breach of contract under New York common law and LMRA Section 301. The breach of contract claim isdismissed with prejudice under Rule 12(b)(6) because the dismissal is on preemption grounds and cannot be cured. The LMRA Section 301 claim is dismissed without prejudice under Rule 12(b)(6) and with leave to amend as discussed below.[9]

## IV.    Title VII Religious Discrimination Disparate Treatment Claims Against NYIT and the NYIT Administrator Defendants

The Moving Defendants move to dismiss Friedberg's Title VII religious discrimination claims on the following grounds.[10] First, they argue that the Title VII claims against the NYIT

---

[9] In light of the Court's dismissal of Plaintiff's LMRA Section 301 claim on this threshold issue, the Court declines to reach any additional arguments for dismissal of this claim, including that the Amended Complaint does not plausibly allege that Friedberg was a member of the CBA.

[10] As discussed above in Discussion § II, Friedberg abandoned his claims under Title VII that he was subjected to a hostile work environment on the basis of his religion. Accordingly, this Section only discusses Friedberg's claims under Title VII that he was subjected to disparate treatment on the basis of his religion.

Administrator Defendants must be dismissed because there is no individual liability under Title VII. (Mem. at 2.) Second, the Moving Defendants argue that the Title VII disparate treatment claims should be dismissed because Friedberg failed to exhaust his administrative remedies. (*Id.* at 21–23 (citing EEOC Charge).) Specifically, the Moving Defendants assert that Friedberg did not allege any discrimination on the basis of his religion in his EEOC Charge and that the claims of discrimination on the basis of religion are not "reasonably related" to the allegations in the EEOC Charge. (*Id.*) Third, the Moving Defendants argue that NYIT's alleged failure to provide Friedberg with a Director-level stipend because of his Jewish faith is time-barred as the failure took place in 2018 (as alleged in the original Complaint) and is therefore outside the 300-day statute of limitations based on the entry of the EEOC Charge on November 25, 2022. (*Id.* at 23.) Fourth, they argue that the Amended Complaint fails to plead plausible claims for disparate treatment on the basis of religion both because it "fails to allege that Defendants were aware of [Friedberg's] unidentified religion," which is needed "to infer discriminatory intent," and because it fails to allege any non-conclusory facts to support the allegation that the termination of Friedberg's employment was because of his Jewish faith. (*Id.* at 24–25.)

Friedberg does not make any arguments to counter the Moving Defendants' argument that the Title VII claims should be dismissed for failure to exhaust and as outside the 300-day statute of limitations, and he also appears to concede that there is no individual liability under Title VII. (*See* Opp'n ¶ 29.) Accordingly, any such arguments are therefore deemed abandoned. *See Mulgrew*, 750 F. Supp. 3d at 202 ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.").

With respect to the Moving Defendants' arguments for dismissal of the Title VII claims for disparate treatment on the basis of religion, Friedberg argues that the Amended Complaint "demonstrates" that he "is a member of a protected class, . . . that he was qualified for his position," and  "that he suffered an adverse employment action," and also pleads "facts . . . sufficient to satisfy [his] minimal burden of showing facts suggesting an inference of discriminatory motivation." (Opp'n ¶ 11; *see also id.* ¶¶ 33–34.) Friedberg also generally argues, without specific reference to his religious discrimination claims, that he "is not required to establish that the decision to terminate him was caused solely by any one discriminatory motive" and that he "is not required to prove separately and distinctly that the adverse action was the 'but for' cause." (*Id.* ¶ 48.)

When an employee is not satisfied with the outcome of an administrative proceeding addressing claims for discrimination under Title VII, the employee may bring a lawsuit in federal district court. *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (requiring a Title VII plaintiff "to exhaust the administrative remedies provided by the statute" prior to filing suit in federal court). In the Second Circuit, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are *reasonably related to* those that were filed with the agency." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (emphasis added). A claim regarding conduct that took place before an EEOC charge is filed is reasonably related to charges filed with the EEOC if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008); *see also Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (recognizing three situations "in which claims not raised in an EEO[C] charge are sufficiently related to the allegations in the charge," only one of

which is applicable to conduct that occurred prior to the EEOC charge). "Claims that introduce a *wholly different type of discrimination* from that in the administrative charge are typically deemed to be *not* reasonably related." *Jennings v. Suny Health Sci. Ctr. at Brooklyn (Downstate Med. Ctr.)*, 201 F. Supp. 3d 332, 336 (E.D.N.Y. 2016) (emphasis added).

Friedberg did not allege any religious discrimination in his EEOC Charge. (*See* EEOC Charge.) As set forth above, Friedberg filed his EEOC Charge by completing and submitting an EEOC form, which asks, "Why you think you were discriminated against?" and provides a checkbox where the employee can report discrimination on the basis of "Religion." (*Id.*) On Friedberg's EEOC charge, the checkbox next to Religion is not checked. (*Id*.) Instead, only the "Age," "Disability," and "Retaliation" checkboxes are checked.[11] (*Id.*) Moreover, none of Friedberg's notes on the EEOC charge reference religion or Friedberg's Jewish faith. Thus, Friedberg fails to mention his religious identity, let alone his concern that he was the victim of religious discrimination, anywhere in his EEOC Charge. (*See id.*)

Moreover, the Title VII claims against disparate treatment based on religion are not reasonably related to the discriminatory conduct alleged in Friedberg's EEOC Charge because it is premised on "a wholly different type of discrimination." *Jennings*, 201 F. Supp. 3d at 336. In addition to only checking boxes relating to discrimination on the basis of his age, disability, and veteran status, Friedberg wrote:

> I was the victim of character assasination [sic] for having mental illness. I have PTSD. I am a veteran. I was spied on, surveilled. I received no due process. I was talking to a student on Jan 24, 2022 and was fired for talking to that student. Based on my mental illness and a false accusation. No Due Process.

---

[11] In this section of Friedberg's EEOC Charge, Friedberg has also handwritten the notation, "I am a veteran with PTSD." (EEOC Charge.)

(EEOC Charge.) This statement is the only allegation of discriminatory conduct by NYIT in the EEOC Charge. (*Id.*) Thus, based on the EEOC charge itself, including this statement and the fact that the "Religion" checkbox is not marked, the charge primarily focuses on Friedberg's disability and veteran status and only cursorily refers to his age and allegation that he was subjected to retaliation. (*Id.*) Nothing in the EEOC charge suggests that claims of disparate treatment based on religion "would fall within the scope of the EEOC investigation" into the conduct alleged in the EEOC Charge, which naturally would focus on Friedberg's allegations that he was subjected to discrimination because of his disability and age and that he was targeted with retaliation. *Mathirampuzha*, 548 F.3d at 76; *see also Jennings*, 201 F. Supp. 3d at 336–37 (finding the plaintiff's race and retaliation claims were not "not reasonably related to those in her charge," which only alleged age discrimination and the "[t]he scope of the EEOC's investigation . . . understandably focused on age").

Thus, even if Friedberg has not conceded the issue of exhaustion by failing to address it in his opposition to the Motion to Dismiss, the Amended Complaint fails to plausibly allege that Friedberg exhausted his administrative remedies with respect to his Title VII claims for disparate treatment based on religion. Moreover, Friedberg does not provide in his opposition brief any indication that he could amend the Amended Complaint to address this problem. The Amended Complaint additionally fails to state plausible Title VII claims against the NYIT Administrator Defendants because Title VII does not provide for individual liability. Accordingly, the Title VII claims for disparate treatment on the basis of religion against NYIT and the NYIT Administrator Defendants are dismissed with prejudice under Rule 12(b)(6). I therefore need not address the Moving Defendants' other arguments for dismissal of these claims.

24

**V.    ADEA Claims Against NYIT and the NYIT Administrator Defendants**

The Moving Defendants make three arguments in favor of dismissal of Friedberg's ADEA claims on the ground that the Amended Complaint fails to state any claims alleging age discrimination against any defendant. (Mem. at 17–20.) First, they contend that, to the extent that these claims are brought against the NYIT Administrator Defendants, the claims must be dismissed because "there is no individual liability under this statute." (*Id*. at 17.) Second, the Moving Defendants argue that the Amended Complaint fails to plead any factual allegations to "support a minimal inference of 'but-for' causality between [Friedberg's] age and his termination" because it offers only "a blanket, conclusory assertion that [Friedberg] is 61 years old and that 'his termination from employment was due to plaintiff's age and was motivated by discriminatory intent.'" (*Id*. at 18 (quoting Am. Compl. ¶ 79).) They rely on *Marcus v. Leviton Manufacturing Company, Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016), for support. (*Id.* at 19.) Third, the Moving Defendants argue that the Amended Complaint fails to provide any factual support for its generic and vague allegations regarding "other employees/professors in similar situations to" Friedberg who "were allegedly forced into retirement or terminated"—and that the Amended Complaint therefore fails to plausibly allege disparate treatment on the basis of age. (*Id.* at 18–19.) The Moving Defendants reiterate these arguments on reply. (Reply at 7–8.)

In opposition, Friedberg argues that at the Rule 12(b)(6) stage, he "is not required to allege . . . specific facts" showing "that his age was the but-for cause of his termination" or to provide "examples showing a pattern of terminating older professors." (Opp'n ¶¶ 32–33.) Instead, Friedberg asserts that the Amended Complaint satisfies the requirement to plead facts sufficient "to give the employer fair notice of what [his] claims are and the grounds upon which they rest . . . ." (*Id.* ¶¶ 33–34.) He also generically argues that he "is not required to establish that

the decision to terminate him was caused solely by any one discriminatory motive" and "is not required to prove separately and distinctly that the adverse action was the 'but for' cause." (*Id.* ¶ 48.)

As a threshold matter, "in the Second Circuit, individuals may not be held liable under the ADEA." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 51 n.3 (S.D.N.Y. 2019); *see also Iwelu v. New York State Off. of Mental Health*, No. 22-3096-cv, 2024 WL 2175938 at *2 n.5 (2d Cir. May 15, 2024) (summary order) (noting dismissal of ADEA claim against individual defendants was proper because "there is no individual liability under [the ADEA statute]"). Therefore, to the extent that the Amended Complaint pleads ADEA disparate treatment claims against any individual Defendants, such claims are dismissed.

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" when the employee is at least 40 years old. 29 U.S.C. § 631(a). To prevail on an ADEA discrimination claim, a plaintiff must ultimately "prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Hence, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plausibly allege that the adverse employment action would not have occurred "but for" the plaintiff's age. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021); *see also Marcus*, 661 F. App'x at 32 ("A plaintiff must plead facts that give plausible support to a minimal inference of the requisite discriminatory causality.").

While the Amended Complaint plausibly pleads that Friedberg is covered by the ADEA because he is 61 years old, it sets forth only conclusory allegations that the termination of

Friedberg's employment "was due to [his] age," "was motivated by discriminatory intent," and "would not have occurred but for his age." (Am. Compl. ¶¶ 79–80.) These conclusory allegations that Friedberg's age was the but-for cause of the adverse action are made without any factual elaboration and are therefore insufficient to support a plausible ADEA claim against NYIT. *See Iqbal*, 556 U.S. at 678 (holding that a complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement").

Accordingly, the ADEA disparate treatment claims are dismissed with prejudice as to the NYIT Administrator Defendants and without prejudice under Rule 12(b)(6) as to NYIT.

## VI.   ADA Disparate Treatment Claims Against NYIT and the NYIT Administrator Defendants

The Moving Defendants seek dismissal of Friedberg's ADA claims against all Defendants, making three distinct arguments.

First, they argue that the ADA claims against the NYIT Administrator Defendants must be dismissed because "there is no individual liability under the ADA." (Mem. at 12–13.)

Second, the Moving Defendants argue for dismissal of the ADA claims against NYIT and the NYIT Administrator Defendants on the grounds that the Amended Complaint "fail[s] to allege any facts from which to infer any discriminatory animus, such as . . . that 'but for' [Friedberg]'s alleged disability he would not have been terminated," and instead only offers "a blanket, conclusory assertion" that Friedberg "suffered an adverse employment action because of his disability." (*Id*. at 13–14; *id.* at 15 (quoting Am. Compl. ¶ 69).) On this point, they argue that the Amended Complaint fails to allege when Flickinger, Quigley, and two of Friedberg's supervisors made certain alleged discriminatory remarks, or the "context" in which such statements were made. (*Id.*) They further argue that the Amended Complaint contains no allegations supporting the notion that "Defendants were motivated" to accuse Friedberg of

posing a risk of harm to students, acted inappropriately towards them, or engaged in sexual misconduct with respect to them "because of [Friedberg]'s alleged disability." (*Id.* at 14–15.) They argue, for example, that the Amended Compliant has alleged that any "non-disabled faculty member was accused of" the same conduct as Friedberg "and was not terminated." (*Id.* at 15.)

Third, the Moving Defendants contend that the Amended Complaint's allegations regarding "other discriminatory motivations for [Friedberg's] termination," including "his age, veteran status, and religion," "undermines any claim that the alleged discrimination took place solely due to any alleged disability." (*Id.* at 15.)

In opposition, Friedberg does not respond to the argument that the ADA does not permit individual liability and instead argues that 28 U.S.C. §§ 1981 and 1983—wholly different statutes—permit individual liability. (Opp'n ¶ 30.) Friedberg also generally argues that the Amended Complaint alleges sufficient facts "to at least provide minimal support for the proposition that [NYIT] was motivated by discriminatory intent and to permit a rational finder of fact to decide that the decision to terminate [Friedberg's employment] was motivated by an improper motive," and that his employment "was terminated under circumstances which give rise to an inference of unlawful discrimination." (*Id.* ¶ 44.) According to Friedberg, a plaintiff bringing an ADA disparate treatment claim may allege facts giving rise to "an inference of discrimination" based on "criticism of a plaintiff in degrading terms[,] . . . through invidious comments[,] . . . or from the sequence of events leading up to the challenged actions." (*Id*. ¶ 36.) Here, Friedberg argues that Quigley and other NYIT Administrator Defendants allegedly "made invidious comments and statements critical of [Friedberg] in degrading terms relating to his PTSD and the symptoms thereof" and that NYIT's accusations of misconduct were pretextual. (*Id.* ¶ 49.)

28

On reply, the Moving Defendants reiterate their opening arguments and note that, in both his opposition and the Amended Complaint, Friedberg "fails to plausibly allege . . . how any of these alleged accusations or remarks have anything to do with his alleged PTSD diagnosis and symptoms or how they suggest that [Friedberg]'s termination was motivated by 'assumptions or attitudes' concerning PTSD." (Reply at 9.)

As a threshold matter, the ADA "does not permit plaintiffs to bring damages claims against individual employees." *Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d. Cir. 2024). Accordingly, to the extent that the Amended Complaint seeks to bring any ADA disparate treatment claims against any individual defendants, these claims are dismissed.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1); *see also Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F. 4th 159, 166–67 (2d Cir. 2024).

To survive a motion to dismiss an ADA disparate treatment claim, a complaint must plausibly allege that "(1) [the plaintiff's] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of [the] job, with or without reasonable accommodation; and (4) [the plaintiff] suffered adverse employment action because of [their] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020); *see also Patel v. NYU Langone Hosps.*, No. 20-112-cv, 2021 WL 4852426, at *2 (2d Cir. 2021) (applying *Woolf* standard on motion to dismiss).

Concerning the "adverse employment action" requirement, I consider the application of *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In *Muldrow*, the Supreme Court held that a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] . . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Rather, the plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"— i.e., the plaintiff must have been "left [] worse off" but not necessarily "significantly so." *Id.* at 355, 359. Although the Second Circuit has not addressed the application of the *Muldrow* standard for an adverse action in the context of an ADA disparate treatment claim, district courts in this Circuit and several Courts of Appeal have applied the *Muldrow* standard in this context. *See, e.g., Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2024) (collecting decisions of Courts of Appeal other than the Second Circuit); *Reid v. Metro One Loss Prevention Servs. Grp.*, No. 23-cv-6303, 2025 WL 2533377, at *8 (E.D.N.Y. Sept. 3, 2025); *Slater v. NYU Langone Health Sys.*, No. 24-cv-03711, 2025 WL 2208292, at *5 (E.D.N.Y. Aug. 4, 2025); *Ciotti v. City of New York*, No. 23-cv-10279, 2025 WL 308022, at *13 (S.D.N.Y. Jan. 27, 2025).

With respect to the fourth element of an ADA disparate treatment claim, the facts alleged in the complaint must plausibly provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). This requires the allegation of facts making it plausible that the plaintiff suffered an adverse employment action at least in part "because of" disability. *See Witcher v. New York City Dep't of Educ.*, No. 23-cv-465, 2024 WL 3220264, at *1 (2d Cir. June 28, 2024); *see also Natofsky v. City of New York*, 921 F.3d 337, 348–50 (2d Cir. 2019) ("[T]he ADA

30

requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000) (explaining that the ADA "cover[s] situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action").

"[V]erbal comments may raise an inference of discrimination, but not where they lack a 'causal nexus to the discriminatory decision.'" *DeFranco v. N.Y. Power Auth.*, 731 F. Supp. 3d 479, 491–92 (W.D.N.Y. 2024) (quoting *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017)). "To determine whether a particular comment is probative of discriminatory animus or is a mere 'stray remark,' a court considers: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (Title VII); *see also DeFranco*, 731 F. Supp. 3d at 491–92 (ADA). None of these factors are dispositive. *Lenzi*, 944 F.3d at 112.

The Moving Defendants do not argue that the Amended Complaint fails to plead any of the first three elements of an ADA disparate treatment claim. (*See generally* Mem.) The Amended Complaint plausibly alleges that NYIT is an employer subject to the ADA, that Friedberg was disabled within the meaning of the ADA, and that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation. (Am. Compl. ¶¶ 66–68; *see also id.* ¶ 37 (alleging that Friedberg was "diagno[sed] and treat[ed] for Post-traumatic Stress Disorder (PTSD)"); ¶ 21 (alleging that Friedberg "was employed as a

31

faculty member" at NYIT "for certain academic terms during the period between 2012 and January 2022"); ¶¶ 43, 77 (alleging that Friedberg's "performance reviews at NYIT indicate that he was sufficiently competent to do his job").) The Moving Defendants also do not dispute that the termination of Friedberg's employment at NYIT constitutes an adverse employment action. (*See* Mem at 12–15.) Instead, the Moving Defendants seek dismissal of the ADA disparate treatment claims on the basis that the Amended Complaint fails to plausibly allege the fourth element: that NYIT terminated Friedburg "because of" his disability. (*See id.* at 13–15.)

The Moving Defendants are correct that the Amended Complaint alleges in a conclusory fashion that Friedberg "suffered an adverse employment action *because of his disability*" and that "the adverse employment action *would not have occurred but for* his disability." (Am. Compl. ¶¶ 69–70 (emphasis added).) The limited factual allegations pled in the Amended Complaint concerning NYIT's motive for terminating Friedberg's employment fail to support a plausible causal link between NYIT's decision and his disability. *See Mitchell*, 745 F. Supp. 3d at 92 ("Naked assertions of discrimination, without any specific allegation of a causal link between the defendants' conduct and the plaintiff's membership in a protected class, are too conclusory to withstand a motion to dismiss.").

The only factual allegations in the Amended Complaint relating in any way to any discriminatory animus on the part of NYIT are the following remarks allegedly made by various NYIT Administrator Defendants and other NYIT employees:

1) The Amended Complaint alleges that "the individual NYIT defendants, *at various times and places*, described [Friedberg] as 'crazy' and . . . a danger to his students based upon his mental state and PTSD" (Am. Compl. ¶ 47 (emphasis added));

2) It alleges that "FLICKINGER stated that [Friedberg] was crazy and a danger to his students" (*id.* ¶ 48);

3) It alleges that Friedberg's "immediate supervisors[] Roy and Silverstein stated that [he] was 'acting like a child'" (*id.* ¶ 49);

4) It alleges that "[b]eginning in December of 2021 and continuing through his termination on January 20, 2022, the individual NYIT [D]efendants . . . made accusations against [Friedberg] that he was acting inappropriately with his students, that his students were uncomfortable with him, that he was guilty of sexual misconduct, that he was not keeping appropriate distance from his students and that he posed a risk of harm to students" (*id.* ¶ 51);

5) It alleges that "QUIGLEY and other individual NYIT defendants made invidious comments and statements critical of [Friedberg] in degrading terms relating to his PTSD and the symptoms thereof including [the aforementioned] accusations" (*id.* at ¶ 72).

Taken together and read in light of the entire Amended Complaint, these remarks do not support a plausible causal connection between NYIT's decision to terminate Friedberg's employment and his disability for several reasons.

First, the Amended Complaint fails to allege which of the NYIT Administrator Defendants, if any, were involved in the decision to terminate Friedberg's role on the NYIT faculty, making it impossible to assess whether the alleged remarks are "stray" remarks or comments that are "probative of discriminatory animus." *Lenzi*, 944 F.3d at 112; *see also Lively*, 6 F.4th at 306–07 ("Remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); *Wesolowski v. Polish Cmty. Ctr. of Buffalo, Inc.*, No. 21-cv-751, 2022 WL 6784611, at *6–7 (W.D.N.Y. Aug. 12, 2022), *report and recommendation adopted,* 2022 WL 6817953 (W.D.N.Y. Oct. 7, 2022) (same applied to an ADA claim).

Second, while the Amended Complaint alleges an array of disparaging remarks made about Friedberg, it fails to identify approximately *when* many of these remarks were made. While the Amended Complaint generally alleges that the NYIT Administrator Defendants began

accusing Friedberg of inappropriate behavior and misconduct towards students "[b]eginning in December of 2021 and continuing through his termination on January 20, 2022" (Am. Compl. ¶ 51), it fails to allege when other remarks that plausibly implicate disability—i.e., that Friedberg was "crazy," a danger to students because of his PTSD, and "acting like a child"—were made. (*Id*. ¶¶ 47–50.) The Amended Complaint only vaguely alleges, for example, that the NYIT Administrator Defendants "*at various times and places*, described the plaintiff as 'crazy' and that he was a danger to his students based upon his mental state and PTSD." (*Id*. ¶ 47 (emphasis added).) It also fails to allege when Flickinger called plaintiff "crazy and a danger to his students," or when Roy and Silverstein described plaintiff as "acting like a child." *See id*. ¶¶ 48–49; *see also Lenzi*, 944 F.3d at 112; *Lively*, 6 F.4th at 307 ("[S]tray remarks are rarely given great weight, particularly if they were made temporally remote from the date of the decision."); *Wesolowski*, 2022 WL 6784611, at *6–7 (same applied to an ADA claim).

Third, the Amended Complaint provides little to no context for any of the alleged discriminatory remarks and accusations leveled against Friedberg, including pertinent information such as: to whom and where the remarks were made and, most importantly, how that context relates to the decision to terminate Friedberg from the NYIT faculty. *See Lenzi*, 944 F.3d at 112.

Fourth, the Amended Complaint fails to allege any other factual allegations to support its conclusory allegations that Friedberg's disability was the but-for cause of his termination. (*See* Am. Compl. ¶¶ 69–70.)

For all of these reasons, the Amended Complaint fails to allege sufficient facts to plausibly show that NYIT terminated Friedberg's employment because of his PTSD or his treatment for that condition. Nevertheless, because the Amended Complaint does include

disparaging comments that may support plausible ADA disparate treatment claims if the deficiencies identified in this Opinion and Order are addressed, the ADA disparate treatment claims against NYIT are dismissed without prejudice under Rule 12(b)(6). However, as addressed above, because the ADA does not allow for individual liability, the ADA claims against the NYIT Administrator Defendants are dismissed with prejudice.

## VII.    The State Law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, the Amended Complaint fails to state any claims under LMRA Section 301, HIPAA, Title VII, the ADEA, or the ADA, and the federal claims are therefore dismissed as set forth above. *See supra* Discussion §§ II–VI. The Amended Complaint does not assert any independent basis for subject matter jurisdiction over Friedberg's state law claims under the NYSHRL and any state law claims regarding violations of the HIPAA, such as diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Am. Compl. ¶ 7.) Because this case is in the early stages of litigation, pursuant to my discretion under 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over these remaining claims. *Chinniah*, 62 F.4th at 703; *see also Tang v. Grossman*, No. 22-464, 2023 WL 2229366, at *3 (2d Cir. Feb. 27, 2023) (summary order) (noting that district court declining to exercise supplemental jurisdiction "is the proper outcome when a court has dismissed all claims 'over which it has original jurisdiction'"); *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 323–24 (E.D.N.Y. 2024) (declining to

exercise supplemental jurisdiction over NYSHRL claim after dismissing plaintiff's Title VII claim); *Brown v. S. Shore U. Hosp.*, 762 F. Supp. 3d 191, 216 (E.D.N.Y. 2025) (same). Accordingly, Friedberg's NYSHRL and HIPAA state law claims are dismissed without prejudice with leave to be realleged in a second amended complaint.

## VIII.    Leave to Amend

Rules 15 and 16 of the Federal Rules of Civil Procedure govern a plaintiff's ability to amend the complaint, and "when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). First, Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right without court permission" twenty-one days after a complaint is served or twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). *Id.* Second, after the time to amend as of right has passed—"either upon expiration of a specified period [of time] in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Id.*; Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-2987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Third, Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted. *Sacerdote*, 9 F.4th at 115. At that point, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule

36

16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed).

As addressed above, the claims set forth in the Amended Complaint against NYIT for disparate treatment under the ADEA and the ADA are dismissed without prejudice due to the lack of factual allegations to support a plausible inference that Friedberg's protected characteristics were the but-for cause of NYIT's decision to terminate Friedberg's employment. However, in an abundance of caution, I afford Friedberg the opportunity to include any additional, good faith factual allegations that support plausible ADEA and ADA disparate treatment claims against NYIT. Accordingly, "justice so requires" granting Friedberg leave to file a second amended complaint under Rule 15(a)(2), Fed. R. Civ. P.

If Friedberg chooses to file a second amended complaint asserting ADEA and ADA claims against NYIT, NYIT may identify any basis for dismissal of these claims by filing a letter seeking a pre-motion conference concerning an anticipated motion to dismiss the second amended complaint.

## CONCLUSION

For the reasons set forth above, I grant the Moving Defendants' Motion to Dismiss under Rule 12(b)(6) in its entirety. Friedberg's claims under federal law for violations of the HIPAA, state law for breach of contract, LMRA Section 301, and Title VII are dismissed with prejudice because amendment will not cure the bases for dismissal. Friedberg's claims under the ADEA and ADA against the NYIT Administrator Defendants are also dismissed with prejudice for the same reason.

However, Friedberg's ADEA and ADA disparate treatment claims against NYIT are dismissed without prejudice. Dismissal of these claims is based on the lack of adequate factual allegations in the Amended Complaint to plausibly plead that Friedberg's age and status as an individual diagnosed with PTSD were the but-for causes of NYIT's decision to terminate his employment. At this stage of the action, it is in the interest of justice to permit Friedberg a final opportunity under Rule 15(a)(2) to amend the Amended Complaint to cure the deficiencies with the ADEA and ADA disparate treatment claims against NYIT.

Finally, because all claims in the Amended Complaint are dismissed, there is no independent basis for jurisdiction over Friedberg's NYSHRL claims and state law claims for violations of the HIPAA, and I decline to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c)(3). Thus, Friedberg's NYSHRL claims and state law claims for violations of the HIPAA are dismissed without prejudice. Friedberg may nevertheless assert these claims in any second amended complaint.

By **June 30, 2026**, Friedberg may file a second amended complaint addressing only the claims for disparate treatment under the ADA and the ADEA against NYIT, his claims under the NYSHRL, and his state law claims to enforce rights under the HIPAA. In the event that Friedberg chooses to file a second amended complaint, by **July 21, 2026**, the Moving Defendants shall file any letter seeking a pre-motion conference concerning any anticipated motion to dismiss the second amended complaint.

Dated: Central Islip, New York
       June 9, 2026

                                     */s/ Nusrat J. Choudhury*
                                     NUSRAT J. CHOUDHURY
                                     United States District Judge

38